**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 92-1328
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROLAND EUGENE BUTLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Northern District of Texas
_____
(April 5, 1993)

Before POLITZ, Chief Judge, and JOLLY and DAVIS, Circuit Judges.

DAVIS, Circuit Judge:

Roland Eugene Butler makes a number of challenges to his conviction and sentence on charges of possessing with intent to distribute both cocaine (Count I) and cocaine base (Count II). We find no error except in the court's order refusing to allow Butler to conduct an independent chemical analysis of the substance alleged to be cocaine base. We therefore affirm on the cocaine charge (Count I), vacate the judgment on the cocaine base charge (Count II), and remand to the district court with instructions to allow Butler to test the substance alleged to be cocaine base.

I.

On August 1, 1991, at approximately 12:45 a.m., Officer Roy Kaiser, a Narcotics detective with the Los Angeles Police Department, observed an African-American female approach the

American Airlines ticket counter at the Ontario International Airport in California. She purchased a ticket with cash and, without carrying any luggage, hurriedly exited the terminal instead of approaching the boarding gate. Officer Kaiser consulted with airport employees and determined that she purchased the ticket in the name of Robin Jamerson. The ticket was for one-way travel departing at 1:00 a.m. to arrive in Washington, D.C. via Dallas/Fort Worth.

Kaiser's partner, Officer Robert Gartner, followed the woman and observed her leave the terminal and hand her ticket to the appellant. The appellant waited for several minutes and then entered the terminal. Officer Gartner followed appellant to the security screening area. Officer Kaiser also observed the appellant, an African-American male wearing a gray, double-breasted suit and carrying a black briefcase and gray garment bag, enter the terminal and quickly approach the security screening area. Officer Kaiser then followed the appellant to the gate area and observed him board the 1:00 a.m. flight to Dallas.

Officer Kaiser then telephoned Agent Mike Munday of the Dallas/Fort Worth DEA Task Force, relayed his observations, and requested that Agent Munday investigate the appellant upon his arrival in Dallas. At the Dallas/Fort Worth Airport, Agent Munday observed a man fitting appellant's description arrive on the flight from Ontario, California. He was carrying a black briefcase and a gray garment bag. Agent Munday approached the appellant, identified himself, and asked for his airline ticket. The ticket, paid for in cash and issued to R. Jamerson, was for one-way travel

2

from Ontario to Washington D.C. via Dallas/Fort Worth. Agent Munday asked for identification but appellant, appearing nervous, denied having any identification. Agent Munday asked appellant if his name appeared correctly on the ticket and the appellant responded that he did not know why the name Jamerson appeared on the ticket. Appellant then presented a California identification card bearing the name Roland Eugene Butler.

Agent Munday asked to search the appellant's briefcase, and the appellant consented to the search. Agent Munday then asked to search the appellant's garment bag. Appellant first responded that he had found the garment bag on the airplane, but later stated that Robin, his half-sister, gave him the bag at Ontario Airport. The appellant did not consent to the search of the garment bag, and Agent Munday asked him to follow the officers to have a drug-detecting canine sniff the bag for the presence of narcotics. The appellant followed the officers to the airport lobby area. The dog gave a positive alert that the garment bag contained narcotics. Agent Munday then arrested appellant and advised him of his **Miranda** rights. The appellant later gave a written consent to search his garment bag and Agent Munday searched the bag in his office. Agent Munday found a white powdery substance and a brown pasty substance, both of which tested positive for cocaine after a field test. Approximately one week later, Agent Munday found a hospital admittance card bearing the name of Roland Butler inside a pocket of a pair of jeans recovered from the garment bag.

Butler was charged with knowingly possessing 988.1 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. §§

3

841(a)(1) and 841 (b)(1)(B); and knowingly possessing 948.4 grams of cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).[1]

Prior to trial, appellant filed a motion to suppress the evidence seized from him at the airport and any statements made during his interrogation. The court overruled the motion after a hearing. The appellant also filed a motion to require the government to furnish appellant with a sample of the controlled substances for testing and analysis. The court denied the motion. The appellant also filed an application requesting the court to order issuance of a subpoena to a character witness in California, which the court also denied.

After trial, the jury returned a verdict of guilty on both counts. The court sentenced appellant to concurrent terms of 240 months imprisonment on each count, and concurrent terms of four years of supervised release on the cocaine offense and five years on the cocaine base offense. Butler filed a timely notice of appeal.

## II.

Butler first challenges the district court's order denying his application for the issuance of a subpoena to produce Kerry Morning, a character witness, and the court's refusal to admit into evidence portions of that witness's affidavit. The affidavit accompanied Butler's application for the issuance of the subpoena

_____

[1] Butler was charged on and found guilty of a third count of knowingly possessing 948.4 grams of cocaine base. After trial, the court granted the government's motion to dismiss and set aside the jury's verdict on this count.

4

and demonstrated the nature of the character witness's testimony. Morning stated that appellant's character and reputation were inconsistent with that of a drug dealer. Appellant contends that the court's ruling violated both his constitutional and statutory right to compulsory process.

On appellant's statutory claim, Fed. R. Crim. P. 17(b) provides that a court shall order a subpoena on a named witness upon a satisfactory showing "that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense." A trial court enjoys wide discretion in determining whether a subpoena should issue under Rule 17(b). **United States v. Ojebode**, 957 F.2d 1218, 1222 (5th Cir. 1992), **cert. denied**, 122 L. Ed. 2d 683 (1993). It is unusual that a character witness's testimony will be essential to an adequate defense. This is not such an unusual case. Cocaine and cocaine base were recovered from a garment bag that Butler was carrying. A card identifying Butler was found in the garment bag. It is unlikely that Morning's testimony would have undermined this strong, direct evidence of guilt. It follows that Morning's testimony probably would not have changed the verdict in this case. We are satisfied that the witness was not "necessary to an adequate defense."

Similar reasoning persuades us that Butler's constitutional claim must also fail. Butler cannot show that he was unable to obtain a fair trial without Morning's testimony. **See Ross v. Estelle**, 694 F.2d 1008, 1011 (5th Cir. 1983).

Appellant also challenges the court's refusal to allow him to

introduce the following passages of Morning's affidavit:

> Roland's character and reputation is not consistent with that of a drug dealer. I have never known Roland to possess, use, or sell drugs.
>
> The accusations against Roland are inconsistent with my knowledge of his character and reputation.

Appellant's argument is meritless. The district court facilitated a stipulation between the parties. It agreed to admit most of the affidavit into evidence because both the government and the appellant stipulated to its admission. The court refused to admit the above quoted part of the affidavit because the government declined to stipulate to its admissibility. The hearsay affidavit was only admissible to the extent the parties agreed to its admissibility. We find no error in the court's refusal to admit the affidavit in its entirety.

### III.

The appellant next argues that the district court erred in overruling his motion to suppress evidence because the officers lacked reasonable suspicion in seizing appellant. For purposes of reviewing the district court's ruling at a suppression hearing we accept the court's factual findings "unless they are clearly erroneous or are influenced by an incorrect view of the law." **United States v. Simmons**, 918 F.2d 476, 479 (5th Cir. 1990).

Agent Munday stopped appellant because he matched a description of an individual who exhibited suspicious behavior in the Ontario airport. The court found that the initial contact between the agents and appellant constituted "mere communication," which does not implicate the Fourth Amendment. **See United States v. Hanson**, 801 F.2d 757, 761 (5th Cir. 1986). We have held that a

6

"simple stop," consisting of a request for identification and a plane ticket, does not constitute a seizure. **United States v. Galberth**, 846 F.2d 983, 989-90 (5th Cir.), **cert. denied**, 488 U.S. 865 (1988).

The court found that a seizure occurred when appellant handed Agent Munday his airline ticket and identification card bearing two different names, and that the seizure was justified and supported by reasonable suspicion. "[A] district court's determination that a seizure has or has not occurred is a finding of fact subject to reversal only for clear error." **United States v. Valdiosera-Godinez**, 932 F.2d 1093, 1098 n.1 (5th Cir. 1991). Accepting the court's finding that a seizure occurred, we must determine whether the officers' detention was supported by reasonable suspicion.

"Reasonable suspicion must be supported by specific and articulable facts which, taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that the intrusion was appropriate." **Simmons**, 918 F.2d at 481 (citing **Terry v. Ohio**, 392 U.S. 1, 21 (1968)). Agent Munday knew that in California the ticket was paid for in cash, was for one-way travel, and was purchased by a woman who did not board the flight. Rather, she gave the ticket to appellant, who was hiding among palm trees outside the airport. Appellant possessed a recently purchased cash one-way ticket in another person's name. Appellant initially denied knowing why the ticket was issued to "R. Jamerson," but later stated that his half-sister had purchased the ticket for herself. Although appellant initially denied having identification, he later showed an identification card, bearing the

7

name of Roland Butler. These facts, when taken together, form a reasonable basis for suspecting that the appellant was engaged in unlawful activity. The officers therefore developed reasonable suspicion to justify detaining the appellant.[2] Because the officers' detention of appellant was supported by reasonable suspicion, the court properly overruled appellant's motion to suppress evidence.

IV.

A.

Next, Butler challenges his conviction of possession of cocaine base and his resulting sentence on three related grounds. First, he argues that the evidence is insufficient to support the jury's finding that he possessed cocaine base.

Butler's argument is meritless. The finding is amply supported by the testimony of an experienced DEA chemist. The chemist, Mr. Edwin Albers, testified that he performs a cocaine base analysis approximately two to three times a week. He testified in detail about the tests he conducted. He tested three samples of substances that were seized from the appellant and concluded that the first sample was cocaine hydrochloride, or cocaine. He concluded that the second and third samples he tested were cocaine base.

The appellant argues that the government produced no evidence that the chemist tested the substance to see if it was smokeable,

_____

[2] Appellant raises no challenge to the propriety of the police action in requesting Butler to accompany them and the later events that led to the recovery of the controlled substances from Butler's garment bag.

8

or able to be vaporized and drawn into the lungs.  The appellant also argues that, at the time the agents seized the substance from him, it was not hard or rock-like, but was soft, mushy, and a bit wet.   In other words, the appellant argues that because the substance was not hard and dry--known properties of crack cocaine-- the substance was not, or had not yet become, cocaine base within the meaning of § 841(b) and the guidelines.  We disagree.

Neither the statute, 21 U.S.C. § 841(b), nor the sentencing guidelines define the term "cocaine base."   This court has found crack cocaine to be a cocaine base, noting that "[n]umerous cases have held that crack cocaine is one type of cocaine base." **United States v. Metcalf**, 898 F.2d 43, 46-47 (5th Cir. 1990).  But this court has not held that crack cocaine is the only form of cocaine base.   Appellant's reliance on **United States v. Thomas** is misplaced. **See United States v. Thomas**, 932 F.2d 1085 (5th Cir.), **cert. denied**, 112 S. Ct. 264, **and cert. denied**, 112 S. Ct. 428 (1991), **and cert. denied**, 112 S. Ct. 887 (1992)   In **Thomas**, the defendant challenged his conviction for possession of cocaine base on grounds that the term "cocaine base" was unconstitutionally vague.  For that reason, he contended that he was not placed on notice that his possession of crack cocaine offended the statute. In rejecting that argument, we stated that the term "cocaine base," when referring to crack cocaine, is not unconstitutionally vague because:  "even many children on the street know the difference between powdered cocaine and crack," and "we can fall back on the common usage and definition of crack cocaine." **Thomas**, 932 F.2d at 1090.   In rejecting this constitutional challenge we did not

suggest that crack cocaine and cocaine base are synonymous.

Other courts have found the term "cocaine base" to encompass more than just crack cocaine. **See, e.g.**, **United States v. Lopez-Gil**, 965 F.2d 1124, 1134 (1st Cir.) (opinion after rehearing) ("Although we continue to believe that Congress indeed was concerned primarily with the crack epidemic in enacting [§ 841(b)], the Government now persuades us that it does not necessarily follow that the term 'cocaine base' includes **only** crack cocaine."), **cert. dismissed**, 112 S. Ct. 2959, **and cert. denied**, 113 S. Ct. 484 (1992); **United States v. Reyes**, 782 F. Supp. 609, 611 (S.D. Fla. 1992) (rejecting contention that cocaine base means only crack, finding that "tan, chunky substance" identical in composition and effect to crack but differing only slightly in physical appearance was "cocaine base").

The record in this case supports the conclusion that one of the substances Butler possessed was cocaine base. "District judges are forced to rely on the expert testimony of chemists who specialize in drug analysis in order to determine the identity of a substance." **Lopez-Gil**, 965 F.2d at 1135. The DEA chemist testified that cocaine hydrochloride becomes cocaine base by dissolving it in water and treating it with baking soda. The hydrochloride molecule then neutralizes and separates from the cocaine base. The cocaine base is not water soluble, so it forms oily droplets and sinks to the bottom of the container. After the water solution is poured off, the cocaine base remains, which cools and hardens into hard chunks. The reaction speeds up when the mixture is heated. The chemist testified that the "mushy, wet"

10

substance seized from the appellant was cocaine base, presumably because the critical reaction transforming cocaine to cocaine base had occurred.

Based on this testimony, we reject the appellant's argument that the wet, mushy substance he possessed had not yet become cocaine base because it had not completed the drying process. Although a substance does not appear to be crack cocaine, it may nevertheless be cocaine base within the meaning of § 841(b). We conclude that the evidence supports the jury's verdict and the court's finding that the appellant possessed "cocaine base" within the meaning of § 841(b) and the guidelines.

### B.

Second, appellant argues that the statute and guidelines, which do not include a definition of "cocaine base," are unconstitutionally vague as applied to him. We disagree. Appellant correctly notes that this Circuit has rejected a challenge that the statute is unconstitutionally vague on its face, because we can rely on "the common usage and definition of crack cocaine." **See Thomas**, 932 F.2d at 1090. He contends, however, that because he did not possess crack cocaine, and because crack cocaine is synonymous with cocaine base, the definition of "cocaine base" is uncertain and unconstitutionally vague as applied to him.

We have rejected appellant's argument that crack cocaine is the only form of cocaine base. We have also concluded that the government's expert testimony supports a conclusion that the wet, mushy substance seized from appellant was cocaine base. Although the substance had not completely dried, it was chunky rather than

11

powdery, and was not water soluble. The term "cocaine base," therefore, encompasses the substance that appellant possessed and is therefore not unconstitutionally vague as applied to appellant's case.

C.

Third, the appellant argues that the court erred in refusing to grant his motion to compel the government to produce samples of the substance alleged to be cocaine base so that appellant could conduct an independent chemical analysis of the substance. In his motion, appellant cited Fed. R. Crim. P. 16(a)(1)(C), which provides, in pertinent part:

> Upon request of the defendant the government shall permit the defendant to inspect . . . tangible objects . . . or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

In cases involving a controlled substance, "a concomitant part of the examination or inspection [is] the right of the accused to have an independent chemical analysis performed on the seized substance." **United States v. Gaultney**, 606 F.2d 540, 545 (5th Cir. 1979), **rev'd sub nom. on other grounds**, **Steagald v. United States**, 451 U.S. 204 (1981).

Because the substance alleged to be cocaine base was obtained from Butler and because the government intended to use the substance as evidence at trial, we agree that the court erred in refusing to grant appellant's motion to test a sample of the substance. But even if the substance was discoverable under Rule 16(a)(1)(C), we must determine whether the court's error prejudiced

12

appellant's substantial rights.  **See United States v. Gonzalez**, 661 F.2d 488, 494 (1981).  Appellant's rights were prejudiced if his inability to test the substance affected the verdict.  **United States v. Montemayor**, 703 F.2d 109, 119 (5th Cir.), **cert. denied**, 464 U.S. 822 (1983).

We conclude that we can not determine from the record whether appellant's substantial rights were prejudiced.  Because no independent analysis of the substance occurred, we can not evaluate whether such an analysis could have changed the verdict.  We therefore vacate appellant's conviction on the cocaine base charge (Count II).  We remand this case to the district court with instructions to order the government to produce a sample of the seized substance alleged to be cocaine base to allow the appellant to conduct an independent chemical analysis of the substance.  The testing shall be under the control and supervision of the district court.  If the analysis raises an issue of fact as to whether the substance tested is cocaine base, then the district court should order a new trial on the cocaine base charge.  On the other hand, if the analysis does not raise a legitimate issue of fact on the chemical composition of the substance and the court determines that the appellant suffered no prejudice, then the district court should reinstate its original judgment.[3]

V.

---

[3] Butler did not limit his Rule 16(a)(1)(C) motion in the district court to the cocaine base.  But his challenge on appeal is to the court's failure to permit him to test the substance "alleged to be cocaine base."  We therefore do not vacate the conviction on Count I.

13

Next, appellant argues that the district court erred when it enhanced his sentence under § 3C1.1 of the Sentencing Guidelines. This section provides for a two-level increase for the willful obstruction of justice during the investigation, prosecution, or sentencing of an offense. The district court acknowledged appellant's constitutional right to a trial and to testify in his own behalf. The court found, however, that appellant obstructed justice not because he declared his innocence under oath, but because he gave perjured testimony on facts that were material to the issues to be decided by the jury. "Though the court may not penalize a defendant for denying his guilt as an exercise of his constitutional rights, enhancement based on perjury is permissible." **United States v. Goldfaden**, 959 F.2d 1324, 1331 (5th Cir. 1992). **See also United States v. Dunnigan**, 113 S. Ct. 1111, (1993) ("Upon a proper determination that the accused has committed perjury at trial, an enhancement of sentence is required by the Sentencing Guidelines.").

Also, the record supports the court's finding that appellant gave perjured testimony. Aside from other, less material inconsistencies in appellant's testimony, the appellant testified that his half-sister asked him to take the garment bag containing the drugs to her nephew in Washington, D.C, and that he owned no clothing found in the garment bag. But the agents found a hospital admittance card bearing appellant's name in a pocket of a pair of jeans recovered from the garment bag. The district court did not err in enhancing appellant's sentence for obstruction of justice.

VI.

14

For the reasons stated above, we affirm the conviction on Count I.  We vacate the conviction on Count II and remand the case to the district court to permit Butler to conduct an independent chemical analysis of the substance identified as cocaine base.  If the district court concludes that Butler suffered no prejudice due to his inability to test the substance earlier, the court may reinstate its judgment.  If, however, the district court finds that appellant was prejudiced from his inability to test the substance it will order a new trial on Count II.

The judgment of the district court is therefore AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.