TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00733-CR







Clarence Caldwell, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0962819, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING







 Appellant Clarence Caldwell was convicted in a jury trial of the offense of delivery of less
than one gram of cocaine, a state jail felony. See Tex. Health & Safety Code Ann. §§ 481.102(3)(D),
481.112(a)(b) (West Supp. 1998). The trial court assessed appellant's punish-ment, enhanced by two
prior felony convictions, at imprisonment for eight years. See Tex. Penal Code Ann. § 12.42(a)(2) (West
Supp. 1998). In five points of error, appellant challenges the sufficiency of the evidence and asserts that
the trial court erred in excluding evidence and in sustaining the State's racially discriminatory peremptory
challenge of a prospective juror. We will overrule appellant's points of error and affirm the trial court's
judgment.


FACTS


 On April 3, 1996, undercover narcotics officer Max Johnson of the Austin Police
Department was driving in East Austin in a vehicle equipped with videotaping equipment attempting to buy
narcotics from "street level dealers." Near an intersection Johnson described as "a very high narcotics area
where [he] had purchased drugs . . . in the past and made numerous drug arrests for possession," Johnson
encountered a person he later identified as appellant. This person asked Johnson what he wanted, and
Johnson responded "two for 30," which was a street term for two rocks of crack cocaine for thirty dollars. 
Johnson was given two rocks of what was later determined to be "cocaine base." On the videotape,
Johnson described the person from whom he purchased the drugs as being 35-40 years old, black male,
5 feet 8 inches tall. Johnson further recalled that the person he encountered was smoking a cigarette and
had no missing front teeth.

 Appellant was arrested on July 2, 1996, ninety days after the transaction. Johnson
admitted that appellant appears considerably older than the person he described and is six feet tall. 
Appellant is missing his front teeth and does not smoke.

 Austin Police Sergeant Ned Anderson, an officer with 24 years of service, was also
assigned to the street narcotics unit. He recognized appellant on the videotape which he had viewed
"[r]ight after Officer Johnson had made the narcotics purchase from him," and at trial. Anderson had
known appellant since approximately 1960, when they were both in junior high school. According to
Anderson, appellant is 50 years of age and 6 feet tall and his hair had been "much longer" for eight or ten
years than it was on the day of trial.

 Austin Police Officer David New, likewise, was a member of the street narcotics unit. On
April 3, 1996, he was assigned to the "identification team" that was in the vicinity of Officer Johnson. New
first saw the videotape on the afternoon after the drug purchase. At the time, New was able to identify
appellant as the person who sold drugs to Johnson based upon his having known appellant for four to five
years. Soon after the purchase, acting on Johnson's broadcast of the description of the suspect, which he
assumed to be the same as Johnson's description on the videotape (black male, 35-40 years old, five feet
eight inches tall), New and a second officer drove by the scene, where New recognized appellant.

 Appellant's hair was long at the time of his arrest and when officers Johnson, Anderson and
New saw him in April and July of 1996. Appellant's hair was in a shorter style at the time of trial. William
Gines, a jail barber, cut appellant's hair three days before appellant's trial. At that time, Gines noticed that
appellant had cakes of dandruff on his scalp and hair. In Gines' opinion, appellant's hair should have been
cut to correct that condition. Appellant never informed Gines that he needed to have his hair cut in order
to go to court.

 Appellant's sister-in-law testified to an alibi defense. Appellant's mother after viewing the
videotape testified the person making the drug sale did not look like her son and the person's voice was
not that of her son.


SUFFICIENCY OF EVIDENCE


 Appellant asserts that the evidence is not sufficient to support the jury's verdict because
the substance appellant possessed and delivered was identified as "cocaine base" rather than "cocaine" as
alleged. A forensic chemist employed by the Austin Police Department testified that she had analyzed the
substance admitted in evidence and that it "contained cocaine base, otherwise known as crack, and the
weight of the substance was 0.17 grams."

 In reviewing the legal sufficiency of the evidence, the test is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial
evidence. See Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991); Mack v. State, 859
S.W.2d 526, 627 (Tex. App.--Houston [1st Dist.] 1993, no pet.).

 Appellant argues that there is no evidence that cocaine base is cocaine and, therefore, the
evidence is insufficient as a matter of law. In support of his argument appellant cites only Jackson v.
Virginia. "Cocaine hydrochloride is water soluble, formed in crystals or flakes and generally snorted by
users." United States v. Barns, 890 F.2d 545, 552 (1st Cir. 1989). "Cocaine base is not water soluble,
concentrated in a hard rock-like form, and generally smoked." Id. "[C]ocaine hydrochloride becomes
cocaine base by dissolving it in water and treating it with baking soda." United States v. Butler, 988 F.2d
537, 542 (5th Cir. 1993). "Crack is a form of cocaine". Barns, 890 F.2d at 553. Cocaine base or crack
is any form of cocaine with a hydroxyl radical in the chemical compound. See United States v. Metcalf,
898 F.2d 43, 46 (5th Cir. 1990); United States v. Buckner, 894 F.2d 975, 976 n.l (8th Cir. 1990). 
Although cocaine base may be distinguished from cocaine hydrochloride, nevertheless cocaine base is
derived from cocaine hydrochloride and is a form of cocaine within the meaning of the statute. See Tex. 
Health & Safety Code Ann. § 481.102(3)(D) (West Supp. 1998). We hold the evidence is sufficient to
support the jury's verdict and overrule appellant's fifth point of error.


HEARSAY


 In his second and third points of error, appellant complains of the trial court's refusal to
allow a jail barber to testify that appellant came to him complaining of a scalp condition and that the barber
advised appellant to have his hair cut short to alleviate his scalp problem. In his fourth point of error,
appellant contends that the trial court's "hypertechnical application" of the hearsay rule deprived him of his
ability to mount a defense and thereby deprived him of due process. Throughout the trial, from opening
statement to closing argument, the State emphasized the fact that appellant showed his "consciousness of
guilt" by having his hair cut just prior to trial to change his appearance so the jury might not recognize him
on the videotape. Appellant complained that, although the State wanted to get into evidence the fact that
appellant got a short haircut immediately prior to trial, the State objected to any hearsay testimony
regarding what was said between the barber and appellant at the time appellant's hair was cut. At trial,
defense counsel conceded "I don't have a problem with any statement that [appellant] made to the barber
being hearsay." On appeal, appellant argues that "even if the trial judge was technically correct, such
technical interpretation [of the hearsay rule] effectively eliminated appellant's ability to mount a defense."

 The trial court allowed the jail barber to testify as follows:




DIRECT EXAMINATION



Questions by State:


 Q. State your name, please.


 A. William Gines.


 Q. Mr. Gines, do you recognize the defendant in this case,
Clarence Caldwell?


 A. Yes, I do.


 Q. Did you cut his hair?


 A. Yes, I did.


 Q. When?


 A. Saturday.


 Q. This last Saturday, September 28th?


 A. Yes.


 Pass the witness.


Questions by Defense:


 Q. Mr. Gines, when you saw Mr. Caldwell this past
Saturday, did you notice anything unusual about the
condition of his hair or scalp?


 A. Yes, I did.


 Q. What was that?


 A. It had cakes of dandruff on it.


 Q. Cakes of dandruff?


 A. Yeah, on the scalp.


 Q. Did you have any opinion of what should be done to correct that
problem?


 A. Yes, I did.


 Q. And what was that opinion?


 A. Cut his hair.


 Q. Sir, it is true that Clarence Caldwell did not say that he needed to get his
haircut in order to go to trial.


 A. No, he did not.



 The barber's testimony admitted by the trial court, and the inferences that may be drawn
from it, allowed defense counsel to legitimately argue to the jury that appellant had his hair cut to alleviate
his scalp condition rather than to change this appearance. We hold the trial court's rulings were correct
and overrule appellant's second, third, and fourth points of error.

 In his first point of error, appellant declares that "[t]he State improperly utilized its
peremptory challenge to exclude prospective juror Ly Heng in a racially discriminatory manner, in violation
of the Fourteenth Amendment." After the conclusion of voir dire and before the jury was sworn,
appellant's counsel "pursuant to 35.261 of the Code of Criminal Procedure and Batson and progeny"
timely moved the trial court to dismiss the jury on grounds the State had exercised its peremptory
challenges in a racially discriminatory fashion. On appeal, the only panel member whom appellant urges
was wrongfully challenged is Ly Heng, an Asian.


 Under our Batson jurisprudence, once the opponent of a peremptory challenge
has made out a prima facie case of racial discrimination (step 1), the burden of production
shifts to the proponent of the strike to come forward with a race-neutral explanation (step
2). If a race-neutral explanation is tendered, the trial court must then decide (step 3)
whether the opponent of the strike has proved purposeful racial discrimination. 
Hernandez v New York, 500 US 352, 358-359, 114 L Ed 395, 111 S Ct 1859 (1991)
(plurality opinion); id., at 375, 114 L Ed 2d 395, 111 S Ct 1859 (O'Connor, J.,
concurring in judgment); Batson, supra, at 96-98, 90 L Ed 2d 69, 106 S Ct 1712. The
second step of this process does not demand an explanation that is persuasive, or even
plausible. "At this [second] step of the inquiry, the issue is the facial validity of the
prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's
explanation, the reason offered will be deemed race neutral." Hernandez, 500 U.S, at
360, 114 L Ed 2d 395, 111 S Ct 1859 (plurality opinion); id., at 374, 114 L Ed 2d 395,
111 S Ct 1859 (O'Connor, J., concurring in judgment).


* * * * *



 It is not until the third step that the persuasiveness of the justification becomes
relevant--the step in which the trial court determines whether the opponent of the strike
has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 90 L
Ed 2d 69, 106 S Ct 1712; Hernandez, supra, at 359, 114 L Ed 2d 395, 111 S Ct 1859
(plurality opinion). At that stage, implausible or fantastic justifications may (and probably
will) be found to be pretexts for purposeful discrimination.



Purkett v. Elem, U.S. , 131 L. Ed. 2d 834, 839 (1995).

 Appellate courts review the record of Batson hearings and voir dire examination in the light
most favorable to the trial court's ruling. See Morris v. State, 940 S.W.2d 610, 612 (Tex. Crim. App.
1996). A ruling on a Batson objection is a credibility determination. Because the trial court determines
the issue of the prosecutor's credibility, the court may consider its past experiences with a prosecutor in
determining his or her credibility. Id.; Fowler v. State, 863 S.W.2d 187, 189 (Tex. App.--Houston
[14th Dist.] 1993, pet. ref'd).

 Here, a Batson hearing was conducted and the trial court ruled that the defense had "met
its burden" and asked the State to respond concerning its reasons for its peremptory challenges which the
defense contended were race discriminatory. The prosecutor stated he did not have much information
about Heng other than Heng was a Buddhist. The prosecutor said his understanding of Buddhism caused
him to believe Heng might have a problem with sitting in judgment of another person. The prosecutor felt
a challenge was proper if a tenet of Heng's faith would prevent him from being able to sit in judgment of
another person. In addition the prosecutor said Heng sat "stone-faced" and did not interact during voir
dire; the prosecutor felt Heng did not show a lot of interest and would not be a juror he could count on "to
watch the evidence closely." The defense did not question or cross-examine the prosecutor, did not offer
evidence, and at that time did not claim the prosecutor's reasons for challenging Heng were a pretext for
racial discrimination. The trial court, stating its ruling was based on the voir dire, the court's observations,
the statements of counsel, and the court's "experience with counsel for both sides," ruled that the State had
established race-neutral reasons for its challenge of Heng and that appellant had not sustained his burden
of persuasion to establish purposeful discrimination.

 Appellant, on appeal, concedes that the trial court did not err in concluding that the State
met its burden by offering race-neutral reasons for its peremptory challenge of prospective juror Heng. 
However, appellant strenuously argues that the trial court did err in concluding appellant had not met his
burden of demonstrating purposeful discrimination. In our review of this claim we may only overturn the
trial court's ruling if it was clearly erroneous. See Camacho v. State, 864 S.W.2d 524, 528 (Tex. Crim.
App. 1993). We must have a definite and firm conviction that a mistake was committed. See Vargas v.
State, 838 S.W.2d 552, 554 (Tex. Crim. App. 1992). To prevail, appellant must establish that the
reasons offered by the State for the peremptory challenge were pretextual and a cover for a racially
motivated challenge. See Comacho, 864 S.W.2d at 528.

 Appellant contends that the State's purported reasons for challenging Heng because he was
a Buddhist, was "stone-faced," and did not interact on voir dire were subterfuges. In an extended
argument, appellant points out that the State did not question either of the two prospective jurors who
stated on their jury questionnaires that they were Buddhists about their religious beliefs and how these
beliefs would affect their jury service in this case. Prospective juror Maxmillian R. Erhlich, as well as Heng,
indicated on his jury questionnaire that his religious preference was Buddhism. During voir dire, the
prosecutor inquired whether the nature of this case would prevent anyone on the panel from being a fair
and impartial juror. Several prospective jurors responded; Ehrlich's response was:


I'm originally from New York City, and I have had quite a few people that were actually
friends of mine that I knew be destroyed by drugs. I have actually had two pretty good
acquaintances that have actually overdosed and died from it, and I am completely
disgusted with it. That's how I feel about it. I feel the same way [another prospective
juror] does about it. I would like to follow the instructions, you know, but I just know in
my heart -- I'm just so disgusted with drugs that I don't believe I can be impartial.


Ehrlich's statement seemed to pretermit his further questioning by either side. The defense challenged
Ehrlich for cause and the State agreed to that challenge. Moreover, jurors in individual cases may be
challenged peremptorily based on their religious affiliation. See Casarez v. State, 913 S.W.2d 468, 496
(Tex. Crim. App. 1994) (on rehearing); Golf v. State, 931 S.W.2d 537, 552 (Tex. Crim. App. 1996).

 Appellant also argues that the prosecutor was mistaken in his belief that the Buddhist faith
prevented a Buddhist from sitting in judgment of another person. Even though the prosecutor may have
been mistaken in his belief, this would not show his peremptory challenge was racially motivated. We
conclude that appellant has failed to show that the reasons offered by the State for challenging Heng were
pretextual and a cover for a racially motivated challenge. Appellant has not shown that the trial court's
ruling was clearly erroneous. We overrule appellant's first point of error.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Jones and Dally*

Affirmed

Filed: February 5, 1998

Do Not Publish










* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988). 



e State
met its burden by offering race-neutral reasons for its peremptory challenge of prospective juror Heng. 
However, appellant strenuously argues that the tr