**UNITED STATES of America,
Plaintiff,**

v.

**Jose M. NIEVES–VELEZ[9],
Defendant.**

**Crim. No. 10–344 (PG).**

United States District Court,
D. Puerto Rico.

Signed June 26, 2014.

Courtney L. Coker, United States Department of Justice, Hato Rey, PR, for Plaintiff.

Francisco M. Dolz–Sanchez, Francisco M. Dolz Law Office, San Juan, PR, for Defendant.

## *OPINION AND ORDER*

JUAN M. PÉREZ–GIMÉNEZ, District Judge.

Before the court is defendant Jose M. Nieves–Velez's "Motion for Downward Departure and/or Variance" (Docket No. 569) and the government's opposition (Docket No. 583). After careful consideration, the court **GRANTS** the defendant's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2012, a jury found defendant Jose M. Nieves–Velez (hereinafter "Defendant" or "Nieves") guilty of conspiracy to possess with intent to distribute 5 kilograms or more of a controlled substance, in violation of 21 U.S.C. §§ 846 and 841; one count of attempt to possess with intent

to distribute 5 kilograms or more of a controlled substance, in violation of 21 U.S.C. § 846; and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The illegal drug transaction the Defendant was accused of took place on July 7, 2010 and involved sham cocaine because it was part of Operation Guard Shack, a large-scale FBI investigation targeting corrupt police officers in Puerto Rico. Resulting from this investigation, approximately 130 individuals—including more than 90 law enforcement officers—were arrested and charged because of their connection to approximately 125 illegal drug transactions.

Subsequent to his conviction, on October 12, 2012, Nieves moved the court to disregard the evidence presented during trial proving the transaction the Defendant was convicted of involved fifteen (15) kilograms of sham cocaine, but instead, use " 'less than 25 grams of cocaine' which is the minimum amount of cocaine which carries a term of imprisonment under the Sentencing Guidelines." Docket No. 569 at page 27. In support of his request, the Defendant asserted that the government engaged in sentencing factor manipulations. Firstly, the Defendant argues that the government improperly enlarged the scope and scale of Operation Guard Shack by including him into a transaction when he was just a self-employed personal trainer, who had never been in law enforcement and had no prior criminal record. In addition, Nieves claims the government manipulated the quantity of drugs dealt in the transaction with the purpose of hiking his base offense level under the federal sentencing guidelines. *See id.* In conclusion, the Defendant requests that the Court use the minimum amount of cocaine that carries a term of imprison-

ment under the Sentencing Guidelines.[1] *See id.* at page 24.

On the same day that Nieves filed this motion, the court sentenced him to a term of imprisonment of 120 months as to the controlled substances counts to run concurrently with each other and 60 months of imprisonment as to the firearm count to run consecutively, for a total term of imprisonment of 180 months. *See* Docket No. 572. During the sentencing hearing, the court discussed the merits of the Defendant's motion and gave the government a term to file its response. The court further stated that judgment would not be entered until the resolution of the Defendant's pending motion, and if the subsequent ruling favored Nieves, a re-sentencing hearing would be scheduled. *See id.* The government complied with the court's deadline and on October 26, 2012, the government filed a 3–page opposition to the Defendant's request for a downward departure in his sentence rejecting that the government engaged in the type of extraordinary misconduct that would give way to a sentencing manipulation claim. *See* Docket No. 583.

## II. DISCUSSION

### A. Sentencing Factor Manipulation

■ Sentencing factor manipulation "occurs when the government 'improperly enlarge[s] the scope or scale of [a] crime' to secure a longer sentence than would otherwise obtain." *U.S. v. DePierre,* 599 F.3d 25, 28–29 (1st Cir.2010) *(citing United States v. Vasco,* 564 F.3d 12, 24 (1st Cir.2009)). In essence, "[a] finding of sentencing factor manipulation authorizes a sentencing court to depart from the guideline sentencing range, as well as from statutory minimums." *Person v. U.S.,* 27 F.Supp.2d 317, 325 (D.R.I.1998) *(citing United States v. Montoya,* 62 F.3d 1, 3 (1st Cir.1995)).

> Sentencing factor manipulation is a more recent concept in this circuit (and some others) by which the judge, not the jury, can adjust a sentence downward if the judge concludes that the government has improperly enlarged the scope or scale of the crime to secure a higher sentence....

> For sentencing factor manipulation, impropriety is the main focus, although predisposition is sometimes described as negating the claim, ..., and in this circuit the threshold is very high,....

*DePierre,* 599 F.3d at 29. "The defendant bears the burden of establishing sentencing factor manipulation by a preponderance of the evidence, ..., and a district judge's determination as to whether improper manipulation exists is ordinarily a factbound determination subject to clear-error review." *U.S. v. Lucena–Rivera,* 750 F.3d 43, 55 (1st Cir.2014) (internal citations and quotation marks omitted).

The First Circuit Court of Appeals has "recognized that because '[b]y definition, there is an element of manipulation in any sting operation,' ... relief for sentencing factor manipulation is reserved for only 'the extreme and unusual case.'" *Lucena–Rivera,* 750 F.3d at 55 *(citing United States v. Fontes,* 415 F.3d 174, 180 (1st Cir.2005)). When the matter is raised, "[i]t requires us to consider whether the manipulation inherent in a sting operation,

---

1. In his motion, Nieves also claimed that the government's evidence during trial regarding his possession of a firearm, as statutorily defined, was insufficient. *See* Docket No. 569 at page 23. Because we find his argument was perfunctory, at best, the court shall deem it waived. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

..., must sometimes be filtered out of the sentencing calculus." *U.S. v. Connell,* 960 F.2d 191, 194 (1st Cir.1992) (internal citations omitted) In fact, the First Circuit Court of Appeals in *Connell* noted that "the question brings to mind much that has been written and stated about the opportunities that the sentencing guidelines pose for prosecutors to gerrymander the district courts' sentencing options and thus, defendants' sentences." *Id.* To that effect, the Court in *Connell* stated that:

> It cannot be gainsaid that the sentencing guidelines, by their very nature, may afford the opportunity for sentencing factor manipulation, particularly in sting operations. We can foresee situations in which exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to committing a lesser crime. **This danger seems especially great in cases where the accused's sentence depends in large part on the quantity of drugs or money involved.**

*Id.* at 196 (emphasis ours). Nevertheless, despite the threshold being high, "should a sufficiently egregious case appear, the sentencing court has ample power to deal with the situation either by excluding the tainted transaction from the computation of relevant conduct or by departing from the GSR [guideline sentencing range]." *Id.*

■ In the case at hand, the Defendant went to trial, but did not testify. Thus, for purposes of this analysis, we will draw some facts from the trial proceedings, from the transcript of the sentencing hearing and the content of the presentence investigation report (PSI Report). *See Connell,* 960 F.2d at 192–193 (*citing United States v. Garcia,* 954 F.2d 12, 14 (1st Cir.1992)).

It stems from these sources then that Nieves was a 39–year–old first-time offender, who at the time of his conviction had been married for twenty years and fathered two children with his wife. During an interview prior to the preparation of the PSI Report, Nieves told the United States Probation Officer (USPO) in charge that "co-defendant Bernis González–Miranda offered [Defendant] a part-time job providing security for a *money transaction.* [Defendant] asserted that he found out of what the transaction was about when the bag containing the drugs was opened." *See* Docket 534 at page 9 (emphasis ours). In fact, the government admits in its response that Nieves "had no contact with agents or confidential informants of the federal government until he arrived at the undercover apartment for his drug transaction." Docket No. 583 at page 3. Moreover, at the time of his sentence, Nieves asserted that he decided to allow the transaction to take place and stayed quiet because of safety concerns for himself and his family stemming from the position he was in at the time of the events he was convicted of, including the type of people he was dealing with.

The First Circuit has held that emotional pressure could presumably be an adequate basis in a sentencing factor manipulation setting. *See U.S. v. Jaca–Nazario,* 521 F.3d 50, 58 (1st Cir.2008). The record in this case indicates, and the government does not reject in its response, that the Defendant was lured into an activity which he may not have even known was illegal, only to have his vulnerability exploited at a later time, *see Connell,* 960 F.2d at 195, when he realized he was in the middle of a drug-trafficking transaction surrounded by other armed individuals. Moreover, Nieves suggests that, given the situation he was in and the kind of people he was surrounded by, he did not have a proper opportunity to ponder that the transaction he would participate in entailed controlled substances, let alone the quantity thereof.

The government does not question this assertion in its response.

■ "To establish a claim, the defendant must show that 'the agents overpowered the free will of the defendant and caused him to commit a more serious offense than he was predisposed to commit.'" *U.S. v. Jaca–Nazario,* 521 F.3d 50, 58 (1st Cir.2008) (*citing United States v. Barbour,* 393 F.3d 82, 86 (1st Cir.2004)). Because the Defendant was not a law enforcement official and his apprehension was thus beyond the scope of Operation Guard Shack, and he was uninformed as to the nature and scale of the drug transaction, the court finds sufficient grounds for concern in order to move on to the second part of the inquiry: "the predisposition of the defendant to commit the crimes." *Jaca–Nazario,* 521 F.3d at 58. "When we find the government's behavior troubling, we examine as well the predisposition of the defendant." *Id.* at 58–59.

As previously set forth, Nieves had no prior criminal record and had had no previous contact with any government agent prior to the events that transpired and landed him in court. Accordingly, no evidence on record exists as to his predisposition to commit *any* type of offense, not to mention a serious one. *See DePierre,* 599 F.3d at 29 (holding a defendant's predisposition is sometimes described as negating the claim of sentencing factor manipulation). In fact, all of the First Circuit cases on which the government relies on in its opposition to Nieves' request for a downward departure reject the defendant–appellant's claim of sentencing factor manipulation *because of* their predisposition to commit the crime they either pled guilty to or were found guilty of.

In *U.S. v. Montoya,* 62 F.3d 1 (1st Cir. 1995), the First Circuit rejected the appellants' claim that the government engaged in sentencing factor manipulation where "the appellants by their own recorded admissions were well established drug dealers or abetters who had previously dealt in very substantial quantities." *Id.* at 4. In *U.S. v. Sanchez–Berrios,* 424 F.3d 65 (1st Cir.2005), the First Circuit also rejected the appellants' accusations that the government engaged in sentencing factor manipulation during the course of a sting operation where the government "fashioned a series of scenarios that fell well within the bounds of the crimes that the appellants indicated they were prepared to perpetrate." *Id.* at 79. The government also cites *U.S. v. DePierre,* 599 F.3d 25, (1st Cir.2010), where the First Circuit rebuffed the argument and found that no wrongful sentencing factor manipulation occurred where the confidential informant (CI) exerted no real pressure, let alone undue pressure, to secure the sale of crack, which defendant showed no hesitation in providing. *See id.* at 29.

However, the facts of this case do not fall into any one of the set of circumstances present in the cases the government cites. On the contrary, the court finds that the Defendant's situation in this case and his lack of predisposition to commit the crime substantially deviates from the rich variety of situations where courts in this Circuit have historically rejected a defendant's or an appellant's claim of sentencing factor manipulation. In light of the facts of this case and this court's ample power to deal with this type of scenario, we hereby find that the Defendant has successfully raised a claim of sentencing factor manipulation that should be duly weighed in the sentencing process, particularly with regards to the amount of drugs involved in the transaction the Defendant participated in.

### III. CONCLUSION

For the above-states reasons, Nieves' motion requesting a downward departure

in his sentence is **GRANTED** and a resentencing hearing shall thus be set.

**IT IS SO ORDERED.**