# United States Court of Appeals
## For the First Circuit

No. 07-1982

UNITED STATES OF AMERICA,

Appellee,

v.

BENITO GRULLON, a/k/a QUICO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Torruella and Boudin, Circuit Judges,

and Schwarzer,* District Judge.

Israel Arana for appellant.
Kirby A. Heller, Department of Justice, with whom Michael J.
Sullivan, United States Attorney, and Neil J. Gallagher, Assistant
United States Attorney, were on brief for appellee.

October 24, 2008

---

*Of the Northern District of California, sitting by
designation.

**BOUDIN**, <u>Circuit Judge</u>.  Benito Grullon was indicted for conspiring to distribute cocaine, 21 U.S.C. § 846 (2000), and also for distributing cocaine, 21 U.S.C. § 841(a)(1).  He was convicted on the conspiracy count; the distribution count was dismissed by the district court without prejudice for pre-indictment delay.  He was sentenced to 63 months imprisonment and now appeals.

Grullon's first contention on appeal is that his motion for judgment of acquittal should have been granted because the evidence against him was insufficient. On such a claim, the trial evidence is recounted in the light most favorable to the verdict. <u>United States</u> v. <u>Portela</u>, 167 F.3d 687, 692 (1st Cir. 1999). We address together both the sufficiency claim and related attacks on the evidence itself.

Grullon appeared on the government's radar screen through a controlled drug buy from a paid government informant, Fernando Soto.  Later, Grullon was identified on a Drug Enforcement Administration wiretap as supplying drugs to his co-defendant Manuel Germosen, as well as Germosen's brother, Christian Germosen. At trial, the government offered two lines of evidence from different sources to prove Grullon's involvement in a drug conspiracy encompassing both the Soto sale and Germosen ring.

The first line stemmed from the DEA's authorized wiretap of Manuel Germosen, part of a DEA investigation into what it believed to be a cocaine organization operating in Lynn and

Peabody, Massachusetts. The wiretap revealed Germosen engaging in various conversations aimed at obtaining cocaine from different sources and then selling the cocaine to others. Often, Manuel's brother Christian, would assist with delivery of the cocaine and the collection of money.

The wiretap revealed that one of Manuel Germosen's suppliers was a man referred to variously as Benito or "Quico." Identification of this supplier was the second strand of evidence. During the original, controlled drug buy on July 30, 2003, the seller's phone number was given to Soto, who passed on to the DEA both the phone number and the seller's license plate number, which Soto had observed. Both were traced to Grullon. Further, Germosen's phone calls to Benito and "Quico" were to the phone number Grullon had provided to Soto.

Grullon says that three of the witnesses who testified against him were unreliable: informant Soto and co-defendant Manuel Germosen because they are career criminals, and Detective Edwards, who worked the case for the DEA Task Force, because, inter alia, tape recordings of the controlled drug buy were lost. Grullon also says that his recorded conversations with Germosen do not involve "drug talk" and thus prove nothing.

If the jury accepted the witnesses' testimony, that evidence together with the calls recorded on the wiretap amply showed Grullon to be part of a drug conspiracy: specifically, that

Manuel Germosen sought to purchase cocaine from Grullon to replenish his diminished supply; that Manuel Germosen told his brother to deliver proceeds of the sale of drugs to Grullon; and that Christian Germosen obtained quantities of cocaine from Grullon, which Christian would then sell to his own customers. In addition, Manuel Germosen testified that Grullon had supplied him drugs later sold to others.

Many defendants are convicted solely on the basis of testimony by criminal confederates. Their truthfulness, like the weight to be placed on Edwards' testimony, was for the jury to determine. United States v. Vázquez Guadalupe, 407 F.3d 492, 499 (1st Cir. 2005). In addition, here the recordings themselves were available to the jury and Soto testified as to one of the accomplished transactions. The jury could not be compelled to convict but it would have been surprising if it had not done so.

Grullon's argument that the recorded conversations were not "drug talk" was for the jury to resolve. Seemingly the conversations recorded between him and Manuel Germosen consisted of "code words," but Manuel Germosen testified to his perceived meaning of those words. A "lay witness[] with . . . inside knowledge [may] give [his] opinion[] as to the meanings of 'code words' used by fellow conspirators in taped conversations" where the testimony satisfies the requirements of Fed. R. Civ. P. 701. United States v. Gaines, 170 F.3d 72, 77 (1st Cir. 1999).

-4-

Despite hints to the contrary in Grullon's brief, substantial evidence indicated that he was the "Benito" supplying drugs to the Germosen brothers. Manuel Germosen was calling Grullon at the very phone number that Grullon had previously given to Soto as Grullon's own. Other internal evidence also pointed to Grullon as "Benito." A Massachusetts state trooper, a native Spanish speaker, testified that the voices attributed to Grullon on the relevant calls were of the same person.

Grullon's second major claim is that the July 30th drug sale to Soto--even if showing Grullon to be a drug seller--was not probative of the charged conspiracy involving the Germosen brothers and should not have been allowed in evidence. Grullon may be arguing that there was no evidence that the Germosens were involved in the controlled buy, and thus the July 30th transaction was not proof of the charged conspiracy, but was instead merely an independent crime that would serve only to prejudice the jury. Or he may be saying that the actual conspiracy was smaller than that charged.

The jury heard testimony that during the time period of the July 30th sale, Manuel Germosen was selling Grullon large amounts of cocaine, which Grullon would then break up and sell to others. So the jury could rationally infer that the July 30th sale was part of the conspiracy either because Manuel Germosen had directly supplied the drugs that were sold by Grullon or, at the

-5-

very least, the proceeds of the sale were used by Grullon to further the conspiracy (i.e. by enabling Grullon to buy more drugs from Germosen). Cf. United States v. Drougas, 748 F.2d 8, 17 (1st Cir. 1984).

The conspiracy may be unusual because Grullon alternated between being both a supplier to and a buyer from the Germosens. But the jury could infer from the evidence that the Soto transaction was part of the larger conspiracy. This is enough to get the Soto evidence to the jury, even if there were not other arguments for relevance; and it permitted, even if it did not require, the jury to conclude that the conspiracy in fact embraced both the Soto sale and the transactions with Manuel Germosen.

Grullon argues in the alternative that the July 30th sale was barred as evidence because the transaction was the predicate for the 841(a)(1) count (distribution) which was dismissed for undue delay under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. (2000). Whether this bars the government's reliance on the transaction as part of its conspiracy charge apparently presents an issue of first impression in this circuit; but the text of the statute, its purpose and the relevant precedents all weigh against the defendant's position.

Under the Speedy Trial Act, the government must file an indictment against a defendant "within thirty days from the date on which such individual was arrested or served with a summons in

connection with such charges." 18 U.S.C. § 3161(b). Where, as was true with the § 841(a)(1) claim, the government fails to comply with the time limit,

> such charge against that individual contained in such complaint shall be dismissed [with or without prejudice depending on certain factors] or otherwise dropped.

18 U.S.C. § 3162(a)(1)(emphasis added). See also United States v. Rodriquez, 63 F.3d 1159, 1162 (1st Cir. 1995).

The language just quoted says only that the charge must be dropped (and not necessarily with prejudice to a new charge being filed). Whether or not the dismissal is with prejudice, the statute says nothing about barring the institution of a new charge for a different offense based on some or all of the underlying transaction and certainly nothing about barring the use of pertinent evidence of the dismissed charge so far as it might prove the new charge.

Purpose, as well as text, is unhelpful to Grullon. A main aim of the timely indictment requirement is to "'ensure that the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge against which he must prepare to defend himself.'" United States v. Meade, 110 F.3d 190, 200 (1st Cir. 1997) (quoting United States v. Berry, 90 F.3d 148, 151 (6th Cir. 1996)). Legislative history also suggests a purpose to "reduc[e] defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay

-7-

from impairing the deterrent effect of punishment." <u>Zedner</u> v. <u>United States</u>, 547 U.S. 489, 501 (2006) (citing H.R Rep. No. 93-1508, at 8 (1974)).

Neither purpose is undercut by allowing the conduct of a dismissed charge from being used as evidence of a different crime where the government has conformed with the Act's strictures. The inconvenience of reindictment, and the risk that this will not be permitted, gives the government ample incentive to avoid delay. And, by hypothesis, the new charge--in which the old transaction may play some role--is not one that was unduly delayed under the Speedy Trial Act.

There are two other issues warranting brief mention. The first is a claim that various statements in the prosecutor's jury summation were improper and prejudicial. The only statement to which an objection was raised below was the prosecutor's exhortation to the jury that they must "follow [their] oath ... [and] find the defendant guilty . . . because it is the right thing to do." Upon objection, the district judge told the jury to disregard the statement.

Although the statement is fairly tame, we have previously told prosecutors not to use such language, primarily because it can shift the emphasis from whether the evidence establishes guilt to other possible concerns (such as whether the defendant is a dangerous man whose jailing would be a good thing for the

community).  See United States v. Mandelbaum, 803 F.2d 42, 44 (1st Cir. 1986).  Yet such comments, save in unusual circumstances, warrant reversal only where prejudice occurred and, given the curative instruction and the weighty evidence against Grullon, the result was not due to this misstep by the prosecutor.[1]

Grullon also presses his argument raised below that the district judge should have declared a mistrial because certain "extraneous" material--namely a joke printed from a website making fun of the legal profession--was found in the jury room after a verdict was returned.  The joke, entitled "Sharks and Lawyers--A Comparative Study," disparaged lawyers in a variety of ways.

The denial of a mistrial by the trial judge based on juror misconduct is likely to be reversed only where there is a "patent abuse of discretion." United States v. Hunnewell, 891 F.2d 955, 961 (1st Cir. 1989).  Here, the lawyer joke posed no real danger of prejudicing the jury against the defendant, having nothing to do with the issues in the case or any more connection with one side's counsel than the other's.  See United States v. Boylan, 898 F.2d 230, 261 (1st Cir. 1990)(extraneous material "did

---

[1]Grullon also raises for the first time on appeal objections to a couple of factual misstatements in the prosecutor's closing remarks.  These errors are even tamer than the statement just discussed and fall well short of meeting the plain error standard for reversal applicable where no timely objection was made.  See, e.g., United States v. Van Anh, 523 F.3d 43, 55 (1st Cir. 2008).

not refer to the case, the trial, the defendants, or their activities").

Nor was the judge required to hold an evidentiary hearing to explore the subjective reactions of the jurors. Whether to hold such a hearing depends on a practical estimate--particularly whether it is likely to serve any useful purpose. Here, there was no such likelihood, absent which there are affirmative reasons to avoid questioning jurors about their thinking. See, e.g., Neron v. Tierney, 841 F.2d 1197, 1205 (1st Cir. 1988) ("[C]ourts generally should be hesitant [] to haul jurors in after they have reached a verdict . . . to probe for potential instances of bias, misconduct, or extraneous influences.") (internal quotation omitted). So there was no error at all, let alone a patent abuse of discretion.

The remainder of Grullon's objections are to the voice identification by the state trooper and to the fact that at sentencing the drug quantity was found by the trial judge by a preponderance of the evidence. These claims are without merit and we mention them only to show that they have not been overlooked.

**Affirmed**.