# United States Court of Appeals
## For the First Circuit

No. 07-2543

UNITED STATES OF AMERICA,

Appellee,

v.

EDDIE SANTIAGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Boudin, John R. Gibson,[*] and Howard,
Circuit Judges.

James M. Falvey, by appointment of the court, with whom Law Office of James Falvey was on brief for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

May 22, 2009

[*]Of the Eighth Circuit, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>.** This is an appeal by Eddie Santiago from his conviction and sentence for drug trafficking; the offense was based on his sale in Springfield, Massachusetts of 99 grams of crack cocaine on May 17, 2004, to a cooperating witness and in the presence of a second such witness. His defense at trial was entrapment. The factual background is complicated but, as Santiago does not challenge the sufficiency of the evidence, the narrative can be shortened.

The background events involve Santiago and the two cooperating witnesses--Jason Dixon and his friend Christopher Ortega. In Spring 2004, Ortega--who had previously been arrested on drug charges by the Drug Enforcement Administration ("DEA")--was working with DEA; Dixon had state drug charges pending against him. Santiago was working as a driver for Juan Pagan, alleged by the government to be a major drug trafficker in Springfield.

After a March 2004 controlled drug sale by Pagan to Ortega, at which Santiago was present, Ortega suggested to DEA that Dixon could help the agency; Dixon in turn told DEA that Santiago had said that he could sell Dixon crack for less than what Pagan charged. The DEA agent instructed Dixon to try to purchase 100 grams of crack from Santiago. Santiago did not answer Dixon's initial phone call, and the agent attempted over the next several weeks to learn more about Santiago.

On April 14, 2004, at the agent's direction, Dixon placed another call--recorded by DEA--to Santiago, and Santiago made clear that he was expecting the call; asked whether he was ready, Santiago replied, "Yeah, I'm ready for you." When Dixon asked whether Santiago "could chef it up"--apparently slang for converting cocaine into crack--Santiago agreed to do it. Although a meeting was arranged, Santiago cancelled because of a trip to Puerto Rico.

On May 6, 2004, Dixon called Santiago again, and the two met later that day (which was not recorded on audio tape, according to DEA, because of lack of time to put a body wire on Dixon). A series of recorded phone calls between the two men on May 14 was followed by another meeting, which was also recorded. The drug sale did not occur on May 14, either because of confusion about the amount of drugs or because Santiago spotted a law enforcement officer following him.

Dixon and Ortega both met with Santiago on May 17, 2004; at that meeting, recorded on both video and audio tape, Santiago gave Dixon a package containing 99 grams of crack, and Dixon paid Santiago $2,500 in DEA funds. Santiago was charged with possessing with intent to distribute 50 grams or more of cocaine base, and distributing it. 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) (2006). After a five day jury trial, Santiago was convicted and sentenced to 180 months' imprisonment. He now appeals.

Santiago's main claim on appeal is that he "was denied the right to present a defense in violation of due process, compulsory process and confrontation rights" guaranteed by the Constitution. The government's case rested primarily on live testimony by two DEA agents and one police officer involved in the investigation, on videotapes of the May 14 and May 17 meetings, and on audiotape recordings of telephone conversations between Santiago and Dixon and Ortega, including a tape of the initial April 14 call.

When Santiago proposed to summon Dixon and Ortega as witnesses as part of his defense, both men invoked their privilege against self-incrimination. The district judge conducted voir dires of both men and concluded that their assertions of privilege were legitimate; and he declined to let them be questioned before the jury on the ground that any unprivileged bits and pieces would merely confuse the jury. The judge also refused Santiago's request that the videotapes and audiotapes be stricken.

Most of Santiago's legal claims under his main heading are scattershot contentions easily answered; one deserves some discussion. It helps frame the issues to understand that at trial the only question was entrapment. Santiago did not contest handing over the crack which, absent entrapment, amply supports the crime charged in light of the quantity involved. United States v. Clifford, 979 F.2d 896, 899 (1st Cir. 1992) ("The evidence of

-4-

defendant's participation in an offload of such large quantities of marijuana is sufficient proof that he intended to distribute the drug."). Santiago does not argue otherwise.

An entrapment defense, not easily established, requires each of two conditions: first that government agents not only induced the crime but did so by a degree of pressure or by other tactics that are improper, United States v. Acosta, 67 F.3d 334, 337 (1st Cir. 1995); and second, that the defendant was not already predisposed to commit the crime, United States v. Rogers, 102 F.3d 641, 645 (1st Cir. 1996). Given the evidence presented, the entrapment claim was very thin; whether the assertion of privilege blocked useful testimony is a different question.

Before turning to that question, Santiago's less plausible claims can be put aside. First, contrary to Santiago's suggestion, the government did not offer overview or summary witness testimony based on inadmissible evidence. Compare United States v. Casas, 356 F.3d 104, 118-20 (1st Cir. 2004). The agents who testified about meetings and conversations had first hand-knowledge of them, having witnessed meetings and listened to conversations directly or through recordings. Nothing to the contrary is identified by Santiago.

Second, and again contrary to Santiago's brief, recordings of what the two informants said were not hearsay offered in violation of the confrontation clause: the statements of the

-5-

informants were not offered for their truth but as exchanges with Santiago essential to understand the context of Santiago's own recorded statements arranging to "cook" and supply the crack. These statements (also not generally offered for their truth) comprised admissions by a party and so cannot be hearsay. Fed. R. Evid. 801(d)(2)(A).[1]

Third, it was not improper for the agents to testify as to the meaning of various slang references in statements made by Santiago or the informants. This can be admitted as lay testimony from experienced officers, expert testimony or both depending on circumstances. United States v. Santiago, 560 F.3d 62, 66-67 (1st Cir. 2009); United States v. Grullon, 545 F.3d 93, 95-96 (1st Cir. 2008). Such testimony of customary usage is no different than evidence of industry practice in a commercial case. Compare Den Norske Bank AS v. First Nat'l Bank, 75 F.3d 49, 57-58 (1st Cir. 1996).

Unlike many cases, the government did not call its informants to testify about their transaction with the defendant, but this was not required in view of the other evidence. Here, the transaction itself was easy to prove without calling Ortega or

---

[1]See United States v. Walter, 434 F.3d 30, 35 (1st Cir. 2006)("Crawford [v. Washington, 541 U.S. 36 (2004)] therefore does not call into question this Court's precedents holding that statements introduced solely to place a defendant's admissions into context are not hearsay, and as such, do not run afoul of the Confrontation Clause."); United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990).

Dixon given the videotape, surveillance and arrest.  Possibly the government knew that its witnesses were unlikely to testify without some invocation of the privilege; possibly it saw some advantage in avoiding attacks on their credibility and making the police testimony and tapes central.  In any event, nothing prevents the government's approach.

This brings us to the privilege issue.  Santiago says correctly he has a constitutional right to present a complete defense, Holmes v. South Carolina, 547 U.S. 319, 324 (2006), but that right is subject to well-settled limitations, which include respecting privileges that pertain to witnesses whom the defendant would like to call.  E.g., United States v. Bowling, 239 F.3d 973, 976 (8th Cir. 2001).  So the basic question here is whether the district court erred in sustaining, in the manner it did, the fifth amendment privilege asserted by each of the informants.

Santiago's first argument is that the informants had no such privilege because they had signed confidential source agreements with the government.  Santiago quotes a passage in Dixon's agreement stating:

> I understand that I have no immunity or protection from investigation, arrest, or prosecution for anything that I say or do, except for activities specifically authorized by my Controlling Investigators pursuant to my cooperation with DEA.

He also cites a case saying that a witness who has been granted immunity can be held in contempt for failing to testify. See In re Grand Jury Proceedings, 835 F.2d 375, 376 (1st Cir. 1987).

There are various problems with this argument but one is decisive. The quoted passage is not a grant of immunity to Dixon except (possibly and by inference) for "specifically authorized" acts. This gave no protection to Dixon as to related criminal conduct not authorized by the agents--there was evidence that he smoked marijuana during one incident--or other criminal conduct which the defense might wish to develop in order to discredit the witness. Nor is there any indication that Ortega had a general grant of immunity that would preclude his claim of privilege.

Santiago was not, as he claimed in the district court (and hints at on appeal), entitled to call the witnesses merely to have them assert their privilege before the jury. Doing so would not infringe their privilege (as it would with a defendant, United States v. Carella, 411 F.2d 729, 731 (2d Cir. 1969) (Friendly, J.)), but in ordinary circumstances, no relevant rational inference can be drawn about the underlying facts because the privilege can be claimed by an innocent person. As United States v. Rivas Macias, 537 F.3d 1271, 1275 n.3 (10th Cir. 2008), sums up the matter:

> Because a jury may not draw any legitimate
> inferences from a witness' decision to
> exercise his Fifth Amendment privilege, we
> have repeatedly held that neither the

-8-

> prosecution nor the defense may call a witness
> to the stand simply to compel him to invoke
> the privilege against self-incrimination.

Finally, Santiago argues--and this is his only substantial argument on appeal--that the district court should have required the informants to be questioned before the jury on a question-by-question basis instead of excluding their testimony entirely. Blanket claims of privilege are not favored as to mere witnesses who may have some unprivileged information to contribute. In re Grand Jury Matters, 751 F.2d at 17 n.4. And the Rivas Macias problem could be avoided by screening out based on voir dire questions as to which privilege would be claimed.

In this case, as the government explains, the court did allow a question by question interrogation of Dixon outside the presence of the jury. It was Dixon who was most likely to have relevant information since he was the purported purchaser who dealt at greatest length with Santiago. But since Dixon himself did not assert the privilege as to every question, Santiago seemingly is arguing that he should have been allowed to question Dixon in front of the jury to derive what information he could.

The district judge did not allow this because he felt that the information that Dixon was willing to supply (as disclosed by the voir dire) was so choppy and limited that it would contribute more confusion for the jury than it would assist in illuminating the issues. This is the kind of fact-specific

judgment that judges make all the time, and reviewing courts typically accord great latitude to these on-the-spot judgments. Cameron v. Otto Bock Orthopedic Indus., Inc., 43 F.3d 14, 16 (1st Cir. 1994).

We reserve the question of how the matter might stand if Santiago established that Dixon likely had important information in aid of Santiago's entrapment defense that was not privileged and could likely have been brought out by a step-by-step examination in front of a jury. It is a serious matter to deprive a defendant of a fair opportunity to establish a merits defense; inconvenience and the risk of some confusion might not outweigh the benefits. Constitutional rhetoric aside, to do so might well (depending on the facts) be an abuse of discretion.

But Santiago had the benefit of a practice-run outside the jury, and his brief does not even begin to show that Dixon had specific pieces of unprivileged information that would have substantially helped the entrapment defense. Santiago did make a summary proffer in the district court but only one of his allegations is even promising--that (allegedly) Dixon repeatedly appealed to Santiago privately about his legal troubles and need for funds--but even proof of this might well do Santiago no good.[2]

---

[2]To constitute undue pressure, this would have to rise to a very high level, United States v. Turner, 501 F.3d 59, 70 (1st Cir. 2007), even assuming dubitante that pressure by an informant could be attributed to the government, United States v. Teleguz, 492 F.3d 80, 84-85 (1st Cir. 2007).

The larger problem is that there is no evidence cited in Santiago's brief that Dixon was prepared to testify to this effect. Santiago was free in the voir dire to ask the judge to explore whether Dixon would testify on this subject without claiming his privilege. Indeed, Santiago, without testifying, could presumably have given his lawyer the details of alleged acts of pressure needed for an effective voir dire and a detailed proffer.

Absent some indication that Dixon would testify as to undue pressure, putting him on the stand as an adverse witness and asking him leading questions would have allowed the defense to put its story before the jury with no meaningful cross examination. The district judge made clear that this was a concern. Possibly there might be special situations in which a judge might allow the tactic; but nothing that would make it appropriate, assuming it ever could be, was established here.

As to Ortega, the situation is largely similar. Santiago's proffer was of the same character--the only potent entrapment allegation (and this without any detail) was of promises and inducements made to Santiago. The government's counter-proffer was, that if Ortega were to testify in full, he would testify that he knew Santiago to be a crack and cocaine dealer who had previously offered to sell Ortega drugs. Nothing indicates that Ortega was prepared to confess he applied any undue or improper pressure.

It is worth adding that the initial conversation between Dixon and Santiago had been recorded and reflected that Santiago with little hesitation was willing to carry through with supplying the crack. Nor did anything in the known dealings, played out over the ensuing weeks, suggest serious hesitancy. And the recorded conversations confirmed Santiago's knowledge of cooking crack and his willingness to do it here. The district judge handled the privilege matter properly and there is no indication of error, let alone prejudicial error.

This brings us to Santiago's second main claim on appeal: that the district court erred in allowing the government to offer, in response to the entrapment defense, evidence of a 1997 cocaine conviction of Santiago in state court. At trial, Santiago argued against admission on the ground that the conviction was almost a decade old and involved powder cocaine, not crack; on appeal he adds that, when it came to sentencing, the district court refused to rely on the conviction.[3]

An entrapment claim allows the government to counter with evidence that the defendant was predisposed to commit the crime and past convictions can easily be relevant to this assessment. See Fed. R. Evid. 404(b); United States v. Reed, 977 F.2d 14, 17 (1st

---

[3]After the jury verdict, the government sought to use the same conviction as the basis for an enhanced sentence for Santiago, 21 U.S.C. § 851(a)(1), but after a hearing the district judge refused, finding that Santiago had received inadequate assistance of counsel in the state court proceeding. See 21 U.S.C. § 851(d)(2).

Cir. 1992) ("Reed's prior cocaine possession conviction was, at very least, _arguably_ admissible under Section 404(b) to help the government meet its burden to establish that he was predisposed to sell cocaine.") (emphasis in original). That the conviction was for powder cocaine (as the jury was told) and some years before the present crack sale lessened its weight, but the judge was still free to deem it more probative than prejudicial. United States v. Van Horn, 277 F.3d 48, 56-58 (1st Cir. 2002).

As for any inadequacy of his state-court counsel, Santiago did not urge this objection when the government offered the conviction at trial, so review is only for plain error. Whether or not any asserted error is deemed plain, the prior conviction cannot be shown to have likely altered the outcome, let alone given rise to a miscarriage of justice--both requirements where no timely objection was made. United States v. Olano, 507 U.S. 725, 735-36 (1993).

On the contrary, the known evidence relevant to entrapment contained nothing to suggest that the government had engaged in misconduct. Absent misconduct, Santiago's alleged lack of predisposition did not matter. True, a prior conviction is strong medicine, and potentially prejudicial, whenever there is doubt whether the defendant did the crime currently charged. Here the transaction was amply witnessed and taped as well, so the prior

-13-

conviction lacks this sting and mattered only if undue agent pressure were shown.

Santiago's last claim is that he should be re-sentenced under the new and lowered crack guidelines adopted on November 1, 2007. To secure consideration of such a claim, Santiago must in the first instance file a motion with the sentencing court pursuant to 18 U.S.C. § 3582(c)(2). See United States v. Lipscomb, 539 F.3d 32, 43 n.9 (1st Cir. 2008); United States v. Chandler, 534 F.3d 45, 51 (1st Cir. 2008). Our dismissal of this appeal is without prejudice to such a motion.

Affirmed.