# United States Court of Appeals
## For the First Circuit

No. 15-2487

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER HENRY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Thompson and Kayatta, Circuit Judges,
and Barbadoro,* District Judge.

Christine DeMaso, Assistant Federal Public Defender, with whom the Federal Defender Office was on brief, for Appellant.
Vijay Shanker, Attorney, United States Department of Justice, Criminal Division, Appellate Section, with whom Leslie R. Caldwell, Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Carmen M. Ortiz, United States Attorney, Glenn A. Mackinlay, Assistant United States Attorney, and John Albert Wortmann, Jr., Assistant United States Attorney, were on brief, for Appellee.

January 18, 2017

---

* Of the District of New Hampshire, sitting by designation.

**BARBADORO, District Judge.** Christopher Henry was convicted after a trial of possession of crack cocaine with intent to distribute. He claims on appeal that the district court erroneously failed to suppress text messages the police obtained from his cell phone pursuant to a search warrant. He also faults the district court for admitting evidence of his prior drug conviction, allowing a police officer to provide inadmissible expert testimony, and failing to instruct the jury on the lesser included offense of simple possession. We affirm.

## I.   BACKGROUND

### A.   The Crimes

May 29, 2014, was the three-year anniversary of the death of a Boston-area gang member, and the police were informed that his family would be holding a memorial gathering at their home that night. Concerned that the event might spark violence, two police officers were dispatched to patrol the neighborhood in a car that was unmarked but that could be identified as a police vehicle based on its make, model, and accessories. As the officers drove toward the address where the gathering was expected, they saw two men standing on the sidewalk. When they drove past, one of the men, later identified as Henry, appeared shocked. Suspicious, the officers stopped and reversed toward the men. Upon seeing the car reverse, Henry and the other man took off running.

- 2 -

The officers gave chase, one by foot and one by car. Henry momentarily eluded the officer on foot by jumping over a fence and running through a schoolyard marked with "no trespassing" signs. The officer then glimpsed Henry running into the yard of a nearby home. He followed Henry into the yard and saw him facing another fence, topped with barbed wire. The officer identified himself, ordered Henry to the ground, frisked him, and arrested him for trespassing. A gun was subsequently found in the driveway of the home on the other side of the fence from where Henry was arrested.

The second man, later identified as Dwayne Leaston-Brown, ran around the side of the school building and disappeared from view. He was eventually found sitting on the steps of the same home where the gun was found. A second gun, bearing Leaston-Brown's fingerprints, was discovered next to the school building along the path he followed as he fled from the police.

Henry was taken to the police station following his arrest where he was booked and thoroughly searched. A search of his pants produced a cell phone and $830 in cash, denominated mostly in $20 bills. Underneath his pants, Henry was wearing a pair of basketball shorts. A search of the shorts produced 21 individually packaged rocks of crack cocaine and two loose rocks, amounting to approximately three grams.

The police later applied for and received a warrant to search Henry's cell phone. The search yielded coded text messages that appeared to reference drug sales. Henry was ultimately indicted for possession of crack cocaine with intent to distribute based on the cocaine the police found during the search at the police station, and possession of a firearm by a convicted felon based on the gun the police discovered in the driveway of the home across the fence from where he was arrested.

B.    **Proceedings Below**

Henry moved to suppress the text messages obtained from the cell phone search on the ground that the search warrant application failed to establish probable cause. In rejecting Henry's motion, the district court relied on the quantity and packaging of the drugs and the large amount of cash Henry was carrying, the discovery of the gun nearby, and the fact that Henry was carrying the cell phone at the time of his arrest. The court also gave weight to the affiant's training and experience, which led him to conclude that cell phones are critical tools of the modern drug trade. Alternatively, the court determined that the text messages should not be suppressed even if the search was not supported by probable cause because the police relied in good faith on the search warrant when they conducted the search.

The government filed a motion in limine prior to trial asking the court to admit evidence of Henry's 2012 state court

- 4 -

conviction for possession of crack cocaine with intent to distribute. Henry challenged the government's motion by arguing that evidence of his past criminal conduct was inadmissible propensity evidence that should be excluded under Rules 404(b) and 403 of the Federal Rules of Evidence. In rejecting Henry's arguments, the district court concluded that Henry's prior criminal conduct was admissible under Rule 404(b) to prove intent and modus operandi. The court also refused to exclude the prior conviction evidence pursuant to Rule 403 because its probative value was not substantially outweighed by the danger of unfair prejudice. When the prior conviction evidence was later admitted at trial, the court instructed the jury that it could consider the evidence to the extent that it was relevant in proving intent or modus operandi, but the fact that Henry may have committed a prior crime did not prove that he committed either of the charged crimes.

The court also rejected Henry's effort at trial to block the government from offering certain expert testimony by a police officer. The officer testified that he had experience investigating drug trafficking as a member of the Drug Control Unit of the Boston Police Department, where he had participated in over 100 drug buys, listened to wiretapped conversations, and instructed other officers on drug trade practices. During the trial, he testified that texts on Henry's cell phone containing terminology such as "flav," "dub," "hard," "plays," "bus[t]ing a

move," and "7 to a 14 lg" referred to drug transactions. These opinions were inadmissible, Henry argued, because they were speculative or within the ken of the average juror. The officer also opined that, "looking at everything, the large amount of money, looking at the booking sheet without any employment, apparently, the large amount of drugs, the way that they're packaged, all similar in size and packaging, . . . putting it all together, in [his] opinion, these drugs were packaged for sale." Henry claimed that this opinion should be excluded pursuant to Rule 704(b) of the Federal Rules of Evidence as an impermissible opinion on intent.

Henry's primary theory of defense was that the officers lied in claiming that they had found drugs on him during the search. He also sent mixed signals as to whether he planned to challenge the government's contention that he possessed the drugs with an intent to distribute. Prior to trial, he informed the court that he would be contesting possession but not intent. He stated in his opening statement that "[i]t may very well be that the packaging and the amount of cocaine in those bags was intended for distribution, but what you're going to learn is that Henry didn't possess it." He also submitted a proposed jury instruction prior to trial, however, that asked the court to instruct the jury on the lesser included offense of simple possession.

The day before closing arguments, Henry renewed his request for a simple possession instruction.  Although the judge agreed to consider the issue further, she told Henry that he should assume that she would not give his proposed instruction.  The next morning, the judge informed counsel that she had looked into case law and determined that it would not be rational for a jury to find simple possession.  On that basis, she told counsel that she would not give a lesser included instruction.  She also stated, "Counsel, your objection as to that is noted for the record." Before bringing in the jury, the judge again stated, "I'm not going to give the lesser included instruction, and I addressed that on the record."

The jury instructions were split into two parts: the jury was given preliminary instructions, each party gave its closing argument, and then the jury was given the remaining instructions, which did not include a charge on simple possession. Following this last set of instructions, the judge met with counsel at sidebar.  The government stated that it did not object to the charge, and Henry's counsel declared that there was "[n]othing from . . . the defense."

The jury convicted Henry of the drug charge, but acquitted him of the firearm charge.  This appeal followed.

## II.  **ANALYSIS**

Henry challenges his conviction by claiming that (1) the warrant authorizing the search of his cell phone was not supported by probable cause; (2) the court erred in admitting evidence of his prior drug conviction; (3) a police expert was permitted to offer inadmissible opinion testimony; and (4) Henry was entitled to a jury instruction on the lesser included offense of simple possession.  We address each argument in turn.

### A.    **The Search of Henry's Cell Phone**

Henry first challenges the denial of his motion to suppress the evidence obtained from his cell phone.  Although his opening brief argues that the warrant to search his cell phone was not supported by probable cause, it inexplicably fails to address the district court's alternative basis for denying the suppression motion: that, even if probable cause was lacking, the good-faith exception to the exclusionary rule applied.  See United States v. Leon, 468 U.S. 897, 920-23 (1984).  By failing to address the good-faith exception in his opening brief, Henry waived any argument that it is inapplicable in his case.  See United States v. Casey, 825 F.3d 1, 12 (1st Cir. 2016) ("[A]rguments raised for the first time in an appellate reply brief [are] ordinarily deemed waived. . . ."); United States v. Stevens, 380 F.3d 1021, 1024-25 (7th Cir. 2004) (concluding that defendant waived argument that good-faith exception did not apply where defendant's opening brief

- 8 -

argued that affidavit in search warrant application failed to establish probable cause but "failed to attack the court's alternative holding that the evidence seized was admissible under the good-faith exception to the exclusionary rule"); see also United States v. Fox, 363 F. App'x 375, 376-77 (6th Cir. 2010) (unpublished) (same).

Henry concedes that his failure to address the good-faith exception in his opening brief waived that argument, but implores us to excuse his waiver. We decline to do so. No extraordinary circumstance explains Henry's failure to address this issue. Instead, this is a garden-variety failure to raise an argument in an opening brief, and excusing Henry's failure in these circumstances would turn our venerable raise-or-waive rule into a toothless tiger.

Henry's failure to preserve for our review any challenge to the district court's alternative basis for denying the motion to suppress leaves us no choice but to affirm. See Fox, 363 F. App'x at 377 ("Since the district court's ruling on the good faith exception sufficed to justify its denial of Fox's motion to suppress, Fox's failure to appeal that aspect of the court's decision means the denial of the motion still stands."); cf. Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29–30 (1st Cir. 2015) (explaining that "[o]ur precedent is clear: we do not consider arguments for reversing a decision of a district court

when the argument is not raised in a party's opening brief" and applying that rule where "the opening brief present[ed] no argument at all challenging [the] express grounds upon which the district court prominently relied in entering judgment"). Because we affirm the denial of the motion to suppress solely on the basis of Henry's waiver, we need not — and therefore do not — express any opinion on whether the warrant was supported by probable cause or whether the good-faith exception applies in this case.

**B.    Henry's Prior Drug Conviction**

A proposal by the government to introduce evidence of a defendant's prior criminal conduct is subject to a two-part test. See United States v. Hicks, 575 F.3d 130, 142 (1st Cir. 2009). "First, a court must ask whether the proffered evidence has a 'special' relevance, i.e., a non-propensity relevance." Id. Under Rule 404(b), "[e]vidence of a crime . . . is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). If prior crime evidence has special relevance under Rule 404(b), the court must move on to consider whether the evidence should nevertheless be excluded under Rule 403. Hicks, 575 F.3d at 142. Rule 403 provides

that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. We review the district court's admission of a prior conviction under Rules 404(b) and 403 for an abuse of discretion. See United States v. Gemma, 818 F.3d 23, 35 (1st Cir. 2016).

Henry claims that his prior drug conviction was relevant only to prove that he had a propensity to sell drugs. Thus, he argues that the evidence should have been excluded pursuant to Rule 404(b). In the alternative, he contends that the court should have excluded the evidence pursuant to Rule 403 because its prejudicial effect substantially outweighed its probative value. We find that the district court did not abuse its discretion in admitting the prior conviction.

Rule 404(b)(2) specifically permits the admission of a prior conviction to prove intent, and we have repeatedly upheld the admission of prior drug dealing by a defendant to prove a present intent to distribute. See, e.g., United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) (finding no abuse of discretion because "when charges of drug trafficking are involved, this [C]ourt has often upheld the admission of evidence of prior narcotics involvement to prove knowledge and intent. . . . The evidence that Manning had previously sold cocaine makes it more likely . . . that he intended to distribute the two bags of

cocaine."); United States v. Nickens, 955 F.2d 112, 124-25 (1st Cir. 1992) (collecting cases) ("[T]his circuit has repeatedly held that a prior involvement with drugs is admissible to prove knowledge and intent. . . . [T]he jury may have [permissibly] inferred that persons who have distributed cocaine in California, are more likely than those who have not, to want to import cocaine from Ecuador."); United States v. Doe, 741 F.3d 217, 230 (1st Cir. 2013) (citing Manning and noting that prior drug sale "makes it more likely" that defendant intended to sell drugs on later occasion); see also, e.g., United States v. Robinson, 809 F.3d 991, 997 (8th Cir. 2016) (noting that prior conviction for drug distribution is admissible under Rule 404(b) to show intent to commit later charge of conspiracy to distribute drugs); United States v. Lee, 573 F.3d 155, 166 (3d Cir. 2009) ("Lee's prior drug trafficking conviction was properly admitted as evidence that Lee intended to distribute any drugs in his possession.").

Henry attempts to distinguish these cases by noting that his theory of defense centered on possession rather than intent. A defendant's failure to argue lack of knowledge or intent, however, does not "remove those issues from the case." United States v. Pelletier, 666 F.3d 1, 6 (1st Cir. 2011) (quoting United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990)). The burden of proving intent remained on the government, even though Henry did not aggressively litigate the issue, and Henry's prior

conviction had probative value in establishing this element of the charged offense. Accordingly, the district court did not abuse its discretion in ruling that the prior-conviction evidence qualified under the intent exception to Rule 404(b).

We pause to note that this conclusion is compelled by the combination of our deferential standard of review and our precedent. The government appears to argue that evidence of a prior drug distribution offense is <u>always</u> relevant under Rule 404(b) to show knowledge and intent in a prosecution for possession of a controlled substance with intent to distribute. As the concurring opinion explains, this across-the-board position seems to overlook that, in many cases, impermissible propensity reasoning lurks as one of the links in the logical chain of relevance. Although we discern no abuse of discretion in this case given our precedent, we encourage district court judges to carefully consider the proponent's assertion of why a prior conviction has special relevance and examine whether, in the particular case-specific circumstances, the proponent is simply attempting to disguise propensity evidence by artificially affixing it with the label of a permitted Rule 404(b)(2) purpose.

Unlike Rule 404(b), which focuses exclusively on whether prior bad act evidence has "special relevance," Rule 403 requires a balancing of probative value and prejudicial effect. When assessing the probative value of evidence under Rule 403, a court

must consider both whether the evidence has been offered to prove an issue that is in genuine dispute, and whether the evidentiary point can be made with other evidence that does not present a risk of unfair prejudice. See United States v. Ford, 839 F.3d 94, 109–10 (1st Cir. 2016); United States v. Varoudakis, 233 F.3d 113, 122–24 (1st Cir. 2000). On the other side of the scale, similarity between the defendant's prior criminal conduct and the charged offense, which may support a finding of "special relevance" under Rule 404(b), increases the risk that the jury will draw an improper inference of propensity that unfairly prejudices the defendant's case. Varoudakis, 233 F.3d at 123. In cases such as Henry's, where a prior drug conviction is offered to prove an intent to distribute drugs on a different occasion, the risk that the jury will use the conviction to infer criminal propensity is especially strong. Courts thus must be alert to this danger when they weigh the prejudicial effect of evidence against its probative value.

In the present case, although Henry did not make the absence of an intent to distribute the centerpiece of his defense, he did raise the issue by seeking a lesser included offense instruction for simple possession. Under these circumstances, the government was entitled to marshal all of its evidence on the issue of intent, including evidence of Henry's prior criminal conviction, in an effort to demonstrate that the evidence on that element was sufficient to prevent Henry from obtaining a jury

- 14 -

instruction on a reduced charge.  Moreover, although the similarity between Henry's prior drug conviction and the charged drug crime presents a risk that the jury might draw an impermissible inference of propensity, the court addressed that risk with a limiting instruction.  Given this instruction, the sufficiency of which Henry did not challenge, we cannot say that the district court abused its discretion in rejecting Henry's claim that the prejudicial effect of the prior crime evidence substantially outweighed its probative value.  In short, this is not the rare case where we are prepared to second-guess the district court's Rule 403 analysis.

Having determined that the district court properly admitted evidence of Henry's past criminal conduct to prove intent, we need not determine whether the same evidence could have been admitted independently to prove modus operandi.  Instead, the real issue is whether the district court committed reversible error in instructing the jury that evidence that was properly admitted for one purpose could also be considered for a different, arguably inadmissible, purpose.  Errors of this sort are harmless if it is "highly probable that the error did not influence the verdict." Hicks, 575 F.3d at 143 (quoting United States v. Roberson, 459 F.3d 39, 49 (1st Cir. 2006)).

Here, the record contains ample evidence to support the verdict.  Moreover, as we have explained, the court permissibly

admitted Henry's prior conviction for a different purpose and instructed the jury that it could not be used to infer criminal propensity. Nothing in the facts or argument at trial pointed to a finding of modus operandi as a pathway to a guilty verdict that was not far more likely to have been provided by a finding of intent. Under these circumstances, if the court erred in instructing the jury that it could also consider Henry's prior conviction as evidence of modus operandi, the error was harmless. Cf. United States v. Levy-Cordero, 67 F.3d 1002, 1011 (1st Cir. 1995) (erroneous instruction that jury could consider prior bad act evidence to show intent or knowledge was harmless where evidence was admissible to show consciousness of guilt).

## C. **Expert Witness Testimony**

Henry complains that the district court improperly admitted expert testimony from a police officer. We review the court's rulings on this issue for abuse of discretion. See United States v. Jordan, 813 F.3d 442, 445 (1st Cir. 2016), cert. denied, 136 S. Ct. 2528 (2016); United States v. Schneiderhan, 404 F.3d 73, 81 (1st Cir. 2005).

"[W]e have long held that government witnesses with experience in drug investigations may explain the drug trade and translate coded language for juries, either through lay or, if qualified, expert testimony." United States v. Rosado-Pérez, 605 F.3d 48, 56 (1st Cir. 2010). "This [C]ourt has repeatedly found

no abuse of discretion in the admission of . . . expert testimony to explain the typical methods of drug dealers." United States v. Monell, 801 F.3d 34, 45 (1st Cir. 2015). This is because police officers' interpretations of the jargon used within criminal circles may "give the jury the benefit of an independent body of specialized knowledge." United States v. Albertelli, 687 F.3d 439, 446 (1st Cir. 2012). Officers may also interpret the slang terminology used by drug dealers. United States v. Santiago, 566 F.3d 65, 69 (1st Cir. 2009).

Notwithstanding this formidable body of precedent, Henry presents two challenges to the police expert's testimony. First, he argues that the court violated Rule 704(b) of the Federal Rules of Evidence by allowing the expert to express an opinion as to whether Henry possessed the drugs with an intent to distribute. Second, he argues that the court should have barred the expert from interpreting his text messages because the expert's interpretations were either speculative or within the ken of the jury. We find no reversible error.

1. Rule 704(b) Claim

Rule 704(b) provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Fed. R. Evid. 704(b). "Those matters are for the trier of fact alone." Id.

- 17 -

Here, Henry concedes that the police expert "did not explicitly state that he believed that Henry had the intent to distribute drugs." Instead, he argues that "the import of" the testimony was improper because it implied that Henry acted with culpable intent. Henry focuses on the following exchange during direct examination:

> Q. Sir, do you have an opinion based on your training and experience considering all of the evidence in this particular case and the reports that you read and your conversations you've had as to whether it is consistent with the [sic] distribution or personal use?

> A. Yes. It's my opinion, looking at everything, the large amount of money, looking at the booking sheet without any employment, apparently, the large amount of drugs, the way that they're packaged, all similar in size and packaging, also looking at — you know, putting it all together, in my opinion, these drugs were packaged for sale.

According to Henry, the expert's opinion that "these drugs were packaged for sale" was impermissible under Rule 704(b) because it implies an answer to a question that is reserved exclusively for the jury.

We conclude that the district court did not abuse its discretion in admitting the expert's opinion. Rule 704(b) bars a witness from characterizing the defendant's intent, but it "does not, however, apply to 'predicate facts from which a jury might infer such intent.'" United States v. Peña-Santo, 809 F.3d 686, 694 (1st Cir. 2015) (quoting Schneiderhan, 404 F.3d at 81), petition for cert. docketed sub nom. Gil-Martínez v. United States, No. 16-6836 (U.S. Nov. 14, 2016). In this case, the expert

grounded his opinion that the drugs were packaged for sale on his general knowledge of criminal practices and the circumstantial evidence bearing on the issue of intent that was produced during the trial. He did not attempt to offer any special insight as to Henry's actual mental state. Accordingly, the expert's testimony is consistent with prior precedent, which recognizes that a qualified expert does not violate Rule 704(b) by expressing an opinion as to whether predicate facts are consistent with drug distribution rather than mere possession. See United States v. Valle, 72 F.3d 210, 216 (1st Cir. 1995). Even if the jury interpreted the expert's testimony to be responsive to the prosecutor's question and not merely to be an opinion about how the drugs were packaged, as Henry posits, the phrasing of that question was permissible. We have upheld expert testimony that certain facts were "consistent with" distribution. See id.

2.   Text Messages

As recounted above, our cases make it clear that a qualified expert may opine as to the meaning of criminals' coded communications. See, e.g., Rosado-Pérez, 605 F.3d at 55-56; Albertelli, 687 F.3d at 446; Santiago, 566 F.3d at 69. Henry does not ask us to overrule our precedents, nor does he contest the officer's qualifications as an expert. Rather, he argues that "[t]he messages contain perhaps two words ('hard' and 'flav') that could be considered specialized language requiring some

- 19 -

explanation."  The remaining messages, he contends, "were normal, uncoded language that the jurors could read and interpret on their own."  We find no abuse of discretion.

First, many of the text messages contain specialized language whose meaning an expert might helpfully illuminate.  For example, the words "flav" and "dub" are jargon inaccessible to many jurors.  See Santiago, 566 F.3d at 68-69 (interpreting "chef it up" as slang for "converting cocaine into crack").  Similarly, the use of ordinary words — e.g., "hard," "work," "plays," "7 to a 14 lg," and "bus[t]ing a couple moves" — in an idiosyncratic way rendered them meaningless to laypersons.  The witness shed light on contextual meanings for these words, which undoubtedly "help[ed] the trier of fact to understand the evidence or to determine a fact in issue."  See Fed. R. Evid. 702(a).

Second, the officer's interpretation of other text messages that did not contain obscure jargon was nonetheless permissible because he drew upon his expertise in explaining the relevance of the communications in the drug trade.  For example, he discussed an exchange in which Henry's interlocutor indicates that Henry has several cell phones and asks to borrow one.  The officer drew upon his extensive experience in explaining the significance of this exchange, by noting that dealers often use multiple phones, each for a different purpose.  Such explanations

are based upon his expertise and are helpful to the jury, which may be unaware of the inner workings of the drug trade.

Third, any danger posed by the testimony was substantially mitigated by cross-examination and the district court's limiting instruction. Once an expert testifies, "[f]rom that point forward, the credibility and weight of the expert's opinion [is] for the factfinder." Jordan, 813 F.3d at 446. The jury's task is to "independently evaluate [his] interpretations," and the defendant's task is to "exhaustively cross-examine[] [the witness] about possible alternative interpretations." See Rosado-Pérez, 605 F.3d at 56. Here, Henry sought to undermine the witness's testimony by cross-examining him on alternative interpretations. For example, Henry effectively cross-examined the witness on the meaning of "bus[t]ing a move" by prompting the officer to recall the lyrics of a popular song that uses the same phrase in a manner unrelated to drug dealing. The danger posed by questionable testimony was also mitigated by the district court's instruction to the jury that it should weigh the evidence independently. See Albertelli, 687 F.3d at 448-49.

For these reasons, the district court did not commit reversible error in allowing the police expert to testify.

D.   **Lesser Included Instruction**

Henry faults the district court for failing to instruct the jury on the lesser included offense of simple possession. We

- 21 -

review a district court's failure to give a properly requested jury instruction de novo, but examine an unpreserved request only for plain error. United States v. Meadows, 571 F.3d 131, 145-46 (1st Cir. 2009). Before turning to the merits of Henry's argument, we first consider the government's contention that the court's failure to instruct the jury on simple possession is subject to plain error review because Henry failed to renew his objection with the court after the charge was read.

1. Failure to Properly Object

Rule 30 of the Federal Rules of Criminal Procedure requires a party who objects to the court's failure to give a proposed instruction to inform the court of his objection "before the jury retires to deliberate." Fed. R. Crim. P. 30(d). The text of Rule 30(d) is silent regarding the earliest point at which a party may object so as to preserve the issue for appeal, but our decisions have ordinarily required the appellant to renew his objection after the jury has been charged when the court has given the parties that opportunity. See Gemma, 818 F.3d at 38; Meadows, 571 F.3d at 146; United States v. O'Connor, 28 F.3d 218, 221 (1st Cir. 1994). We have also determined that this rule is "binding on both the court and attorney and that a statement by the court 'after the charge that objections made prior to it will be saved does not absolve the attorney from following the strictures of the rule.'" O'Connor, 28 F.3d at 221 (quoting Poulin, 18 F.3d at 982).

Henry attempts to avoid this precedent by invoking our decision in United States v. Kaplan, 832 F.2d 676, 682 (1st Cir. 1987). Kaplan, however, cannot save Henry from failing to properly preserve his objection. Unlike in this case, the defendant in Kaplan renewed his request for an instruction following the jury charge, but simply did not "repeat the magic word 'objection.'" See Kaplan, 832 F.2d at 682. Finding that our precedents did not require the strict use of that word, we determined that the objection had been preserved. See id. Here, in contrast, Henry did not make any attempt to preserve his objection after the charge was read.

Henry also correctly notes that there are circumstances where "a court should not require a lawyer 'to persist stubbornly when the judge has made it perfectly clear that he does not wish to hear what the lawyer has to say.'" United States v. Fernández-Garay, 788 F.3d 1, 4 (1st Cir. 2015) (quoting United States v. Toribio-Lugo, 376 F.3d 33, 41 (1st Cir. 2004)). Henry, however, did not face those circumstances. He cannot plausibly argue that he "had no reasonable opportunity" to object. Cf. Fernández-Garay, 788 F.3d at 4 (Rule 51 objection preserved where judge abruptly cut short defense counsel and forbade him from continuing). Immediately following the jury charge, but before deliberations, the district court invited counsel to sidebar. The prosecution informed the court that it had "no objection" to the

instructions, and Henry stated that there was "[n]othing from . . . the defense."  Henry was required to object here.  After being invited to sidebar, he would not have "affront[ed] the court or prejudice[d] the jury beyond repair" by respectfully renewing his objection.  See Toribio-Lugo, 376 F.3d at 41 (quoting Douglas v. Alabama, 380 U.S. 415, 422 (1965)).

In the present case, the district court invited the parties to approach the bench after it completed its instructions in an obvious effort to permit the parties to register their objections to the jury charge.  Henry did not present any objections in response to this invitation.  Accordingly, his claim that the court erred in failing to instruct the jury on simple possession is reviewed only for plain error.  See Meadows, 571 F.3d at 146.

2.  Simple Possession Instruction

A failure by the district court to give a proposed jury instruction will qualify as plain error only if the defendant demonstrates that "(1) an error occurred; (2) which was clear or obvious; and both (3) affected [his] substantial rights; and (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Gemma, 818 F.3d at 30 (alteration in original) (quoting United States v. Laureano-Pérez, 797 F.3d 45, 60 (1st Cir. 2015)).  "This standard is exceedingly difficult to satisfy in jury instruction cases: '[T]he plain error hurdle, high

in all events, nowhere looms larger than in the context of alleged instructional errors.'"  Meadows, 571 F.3d at 145 (quoting United States v. González-Vélez, 466 F.3d 27, 35 (1st Cir. 2006)).

Henry cannot satisfy the plain error test because he is unable to show that his substantial rights were affected by the court's refusal to instruct on simple possession.  To satisfy this requirement, a defendant must establish "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different."  United States v. Rodríguez, 735 F.3d 1, 11 (1st Cir. 2013) (alteration in original) (quoting United States v. Hebshie, 549 F.3d 30, 44 (1st Cir. 2008)).  Henry fails to present a persuasive argument that the jury might have acquitted him of the possession with intent to distribute charge if it had been instructed on the lesser included offense of simple possession given that: the record contains no affirmative evidence that Henry possessed the drugs for personal use; Henry's intent to distribute was minimally contested and nearly conceded at trial; the quantity of drugs Henry carried was consistent with an intent to distribute; Henry was carrying a large amount of cash denominated at the street purchase price for crack cocaine; and Henry's text messages suggested that he was a dealer of drugs rather than a mere user. Accordingly, the district court did not commit plain error in refusing to instruct on the lesser included offense of simple possession.  Cf. United States v. Henson, 945 F.2d 430, 440-41

(1st Cir. 1991) (holding that failure to give lesser included offense instruction was not "error of sufficient magnitude to overcome the 'high hurdle' interposed by the plain error rule" where uncontroverted evidence was sufficient to establish additional elements of greater offense).[1]

### III. CONCLUSION

For the reasons stated, Christopher Henry's conviction and sentence are affirmed.

**- Concurring Opinion Follows -**

---

[1] The district court enhanced Henry's sentence based on a finding by a preponderance of the evidence that he possessed a gun during the commission of his drug crime. Henry complains that the enhancement violated his constitutional rights under the Fifth and Sixth Amendments because it was based on acquitted conduct. We decline to consider this argument because, as Henry acknowledges, his argument is foreclosed by Supreme Court and First Circuit case law. See United States v. Watts, 519 U.S. 148, 149 (1997) (per curiam); United States v. Alejandro-Montañez, 778 F.3d 352, 361 (1st Cir. 2015).

**KAYATTA, Circuit Judge, with whom THOMPSON, Circuit Judge, joins, concurring.** Because the court's opinion well marshals our controlling precedent in support of its conclusions, I join in full. I write separately only to note that the admission of evidence of a prior conviction to establish the "intent" of the defendant in connection with the offense being tried can become indistinguishable from the admission of evidence of a prior conviction to prove a propensity to commit that type of crime.

The opinion for the court relies on our prior opinion in United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) to approve the admission of a prior drug distribution conviction to prove the element of intent in this later drug distribution case. There is reason to think, though, that the inference that Manning licensed in this case, and in drug cases of this sort, is contrary to Federal Rule of Evidence 404(b). See United States v. Miller, 673 F.3d 688, 699 (7th Cir. 2012) ("How, exactly, does [the defendant's] prior drug dealing conviction in 2000 suggest that he intended to deal drugs in 2008? When the question is framed this way, the answer becomes obvious, even though implicit: 'He intended to do it before, ladies and gentlemen, so he must have intended to do it again.' That is precisely the forbidden propensity inference."); United States v. Turner, 781 F.3d 374, 390-91 (8th Cir.) (similar), cert. denied, 136 S. Ct. 208 (2015),

cert. denied, 136 S. Ct. 280 (2015), and cert. denied, 136 S. Ct. 493 (2015).

This case illustrates the manner in which the relevance of a prior conviction admitted to prove "intent" under Manning may rest on little more than propensity. In its brief, the government did not articulate how Henry's prior conviction was relevant to whether he intended to distribute the crack cocaine found in his pocket on May 29, 2014. At oral argument, the government posited that the prior conviction was relevant to Henry's intent because the fact that Henry possessed fourteen separately packaged rocks of crack cocaine with the intent to distribute them in March 2011 implies that he intended to distribute the twenty-one separately packaged rocks of crack cocaine he possessed in May 2014. This reasoning is propensity-based. It requires inferring from Henry's prior conviction that he has the following character trait: whenever he possesses separately packaged rocks of crack cocaine, he intends to distribute them. That is, his propensity is to be a seller, rather than a buyer or user. It then requires inferring that he acted in accordance with that character trait in May 2014. The admission of Henry's prior conviction on this line of reasoning, although allowed by Manning, appears to run afoul of Rule 404(b)(1), which bars the use of other acts evidence "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

For the foregoing reasons, one can make a good argument for going en banc in a future case to reconsider our Rule 404(b)(1) jurisprudence.  I say "future" case because, in this particular case, any Rule 404(b) error was harmless given the overwhelming evidence of Henry's guilt.

The main argument for not revisiting Manning at some point (assuming one thinks it may be wrong) is that it might not be worth the effort, given that in drug cases of this sort, prior convictions are often admitted for multiple reasons.  For instance, in many cases, prior convictions are admitted to show both knowledge of the nature of a substance and intent to distribute.  See, e.g., United States v. Doe, 741 F.3d 217, 230 (1st Cir. 2013); United States v. Pelletier, 666 F.3d 1, 6 (1st Cir. 2011); United States v. Hicks, 575 F.3d 130, 142 (1st Cir. 2009); United States v. Landrau-López, 444 F.3d 19, 24 (1st Cir. 2006); United States v. Nickens, 955 F.2d 112, 123-24 (1st Cir. 1992) (collecting cases).  Commonly, there are chains of inference from a prior conviction to knowledge that do not include propensity as a necessary link.  See, e.g., United States v. Arias-Montoya, 967 F.2d 708, 710-11 (1st Cir. 1992) (discussing several prior cases where prior convictions were admitted on knowledge grounds); United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990).

Overruling Manning would nevertheless have three non-trivial effects in cases where the only inferential chains linking

a prior conviction to intent to distribute include criminal propensity. First, it would mean that juries in these cases would not be instructed that they could use prior convictions to infer intent. Second, it would mean that the relevance of a prior conviction to intent to distribute would contribute not to the conviction's probative value under Rule 403, but instead to the risk of unfair prejudice. Third, it would allow defendants to keep a prior conviction out of a case without having to stipulate to intent to distribute. These effects would occur even in cases where the prior conviction might be specially relevant on one of the other grounds listed in Rule 404(b)(2).

The third of these effects can be particularly significant. Consider, for example, a case in which a prior drug sale is relevant to knowledge, which happens not to be an element that the defendant desires to challenge. In Ferrer-Cruz, 899 F.2d at 139; United States v. Garcia, 983 F.2d 1160, 1175-76 (1st Cir. 1993); and Pelletier, 666 F.3d at 6, we pointed to the possibility that a defendant may remove an issue like knowledge from a case by tendering an express disavowal and willingness to accept a corresponding limitation on cross-examination and jury instruction. While we have never had occasion to accept or reject

such an approach directly in construing Rule 404,[2] certainly the district courts can achieve the same result on their own simply by finding that the presence of such a disavowal and instruction shift the Rule 403 balance against admission. Manning complicates such an approach because it effectively requires a stipulation on intent as well in order to eliminate fully the Rule 404(b)(2) toehold for admitting the evidence. Of course, even under Manning, trial courts have ample room to keep out such evidence under Rule 403 even in the absence of a stipulation on intent. As this case shows, though, sometimes they do not exercise that discretion in this manner.

_____

[2] The Supreme Court has held that a stipulation to felon status, when it is an element of a charged crime, does not eliminate the relevance of a prior conviction to that element, but merely impairs its probative value under Rule 403. See Old Chief v. United States, 519 U.S. 172, 179 (1997) ("[The] evidentiary relevance [of Old Chief's prior conviction] under Rule 401 [was not] affected by the availability of alternative proofs of the element to which it went, such as an admission by Old Chief . . . ."); id. at 184 ("[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives."). There is room to debate both whether this reasoning from Old Chief applies to prior convictions introduced for one of the purposes listed in Rule 404(b)(2) and whether its holding as to relevance applies to so-called "special relevance" under Rule 404(b). Compare United States v. Crowder, 141 F.3d 1202, 1206-07 (D.C. Cir. 1998) (en banc), with id. at 1212-13 (Tatel, J., dissenting).